IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| WILLIAM WHITE | ) | No. 08 CR 851 |
| | ) | |
| | ) | Judge Adelman |

**MOTION TO DISMISS THE SUPERSEDING INDICTMENT**

NOW COMES WILLIAM WHITE, by and through counsel, NISHAY K. SANAN, and respectfully moves this Honorable Court to dismiss the indictment based on prosecutorial abuse in front of the Grand Jury and a lack of probable cause, and in support states as follows:

**BACKGROUND**

In Count One of the indictment, White is charged with violating 18 USC § 373. The government alleges that White, with "intent that another person engage in conduct constituting a felony that has as an element the use, attempted use, or threatened use of force against the person of Juror A[1]… solicited and otherwise endeavored to persuade such other person to engage in such conduct." Specifically, the government alleges that White posted an article on Overthrow.com, entitled "The Juror Who Convicted Matt Hale."

During the grand jury proceedings, the prosecution examined a federal agent concerning posts that Defendant White made on Overthrow.com. The prosecution presented the grand jury with evidence of posts pertaining to president-elect Barack Obama, the Jena Six, and Elie Wiesel. The presentation of this evidence to the grand jury was improper use of prior acts, was

---

[1] As state in Count One, paragraph A of the indictment, Juror A was the foreperson of the jury that convicted Matthew Hale, the leader of a white supremacist organization known as the World Church of the Creator, in the Northern District of Illinois.

otherwise irrelevant to the charge at issue and was used to scare the conscious of the Grand Jury to cause the return of the Indictment.

During the proceeding to obtain the superseding Indictment, the government presented an agent who simply discussed the postings continued in paragraphs 5(e), (f) and (g) in addition to speculation by the agent as to White's mental status.

## ANALYSIS

When deciding whether to dismiss an indictment that is based on nonconstitutional error, this Court should apply the standard announced in *United States v. Mechanik*, 475 U.S. 66 (1986). In *Mechanik*, Justice O'Connor announced that "dismissal of the indictment is appropriate only 'it if is established that the violation substantially influenced the grand jury's decision to indict,' or if there is 'grave doubt' that the decision to indict was free from the substantial influence of such violations." *Bank of Nova Scotia v. United States*, 487 U.S. 250, 256 (1988)(quoting *Mechanik*, 475 U.S. at 78); *see also Kotteakos v. United States*, 328 U.S. 750 (1946). The Court based this standard, in part, on Federal Rule of Criminal Procedure 52(a) which states that "[a]ny error, defect, irregularity or variance which does not affect substantial rights shall be disregarded." *Fed.R.Crim.Pro. 52(a)*. The Court in *United States v. Hastings*, 461 U.S. 499, 506 (1983) stated that the Court's "[s]upervisory power to reverse a conviction is not needed as a remedy when the error to which it is addressed is harmless since, by definition, the conviction would have been obtained notwithstanding the asserted error." Here, however, the situation is very different.

In order to dismiss an indictment based upon the Prosecutor's conduct, "such as misleading or misinforming the grand jury," the court must either find that the "defendant suffers prejudice as a result of the Government's actions", *United States v. Piedrahita*, 791 F.Supp. 418,

420 (S.D.N.Y. 1992), citing Bank of *Novia Scotia v. United States*, 487 U.S. 250,258, 108 S.Ct. 2369, 2373 (1988). Prejudice may be presumed from constitutional error "where the structural protections of the grand jury have been so compromised as to render the proceedings fundamentally unfair. …" Bank of Novia Scotia, 487 U.S. at 257, 108 S.Ct. at 2374–75, citing Rose v. Clark, 478 U.S. 570, 577–78, 106 S.Ct. 3101, 3105–06 (1986).). When determining whether constitutional error is present, the focus of the inquiry is "on the impact of the alleged misconduct on the grand jury's impartiality, not on prosecutorial culpability." *United States v. Sears, Roebuck & Co., Inc.*, 719 F.2d 1386, 1392 (9th Cir. 1983), cert. denied, 465 U.S. 1079 (1984).

In this case, the prosecutor's conduct substantially influenced the grand jury's decision and cannot, therefore, be considered harmless. *Bank of Nova Scotia*, 487 U.S. at 263 ("If violations did not substantially influence this decision, or if there is grave doubt that the decision to indict was free from such substantial influence, the violations cannot be deemed harmless.") The prosecutor achieved such influence by presenting the grand jury with testimony and exhibits that were taken/presented out of context, were irrelevant to the charges sought and served no purpose other than to shock the conscience and scare the grand jury into returning an indictment.

I.  **The Indictment Must Be Dismissed Because Prosecutorial Conduct Infringed On the Grand Jury's Ability To Exercise Independent Judgment**

This Court must dismiss the indictment because it is based on the prosecutor's presentation of improper and incomplete information to the Grand Jury. Specifically, the prosecutor in this case presented a significant amount of irrelevant and prohibited evidence of Defendant White's past acts[2] in an attempt to show "circumstances strongly corroborative" of

---

[2] For a complete discussion of the prohibited nature of the evidence, see Defendant's Motion to Strike Surplusage.

3

White's intent as described in the charging statute.[3] Additionally, the prohibited evidence that the prosecution presented was presented out of context, was incomplete and substantially influenced the grand jury's decision to indict.

After enacting 18 USC 373 as part of the Comprehensive Control Act of 1984, Congress provided some examples of what strongly corroborative circumstances were with regards to solicitation. The court in *United States v. Gabriel*, 810 F.2d 627 (7th Cir. 1987) discussed Congress' examples which are listed as follows:

> (i) the fact that the defendant offered or promised payment or some other benefit to the person solicited if he would commit the offense;
> (ii) the fact that the defendant threatened harm or some other detriment to the person solicited if he would not commit the offense;
> (iii) the fact that the defendant repeatedly solicited the commission of the offense, held forth at length in soliciting the commission of the offense, or made express protestations of seriousness in soliciting the commission of the offense;
> (iv) the fact that the defendant believed or was aware that the person solicited had previously committed similar offenses;
> (v) the fact that the defendant acquired weapons, tools or information suited for use by the person solicited in the commission of the offense, or made other apparent preparations for the commission of the offense by the person solicited

810 F.2d at 635. While this list is not exhaustive, it does clearly show that Congress intended that a showing of intent under the solicitation statute involve actual action of some sort. Whether this action involves offering payment or threatening harm to the person being solicited or repeatedly soliciting the same person for a particular crime, there can be no doubt that there must be some showing of actual action by the defendant. That action must evidence the defendant's

---

[3] Title 18 of United States Code Section 373, subsection A states "…and under circumstances strongly corroborative of that intent, solicits, commands, induces, or otherwise endeavors to persuade such other person to engage in such conduct."

4

intent for the acts to be considered strongly corroborative circumstances rather than just prior acts in order to show action in conformity therewith.

With regard to irrelevant and inflammatory evidence, the government chose to first present the grand jury was testimony regarding president-elect Barack Obama. The prosecutor was examining a federal agent with regard to the charge at issue. The prosecutor stopped asking the agent about the post on Overthrow.com regarding Juror A, and began discussing posts made prior to September 11, 2008. The prosecutor asked about a magazine entitled *National Socialist*, the cover of which was posted on Overthrow.com. *See Government Ex. 2*. The exchange between the prosecutor and the federal agent is as follows:

> Q   And did this magazine cover read again, "Kill this Nigger Negro Deification and the Obama Assassination Myth?"
> A   Correct
> Q   And did the cover actually depict an image of presidential candidate Barack Obama?
> A   Yes.
> Q   And was there anything else on this cover?
> A   There is a swastika drawn to appear as cross hairs when you would look through the sites of a rifle or another gun like that and that is drawn over his face.
> Q   Okay. So it's a cross hair like someone is aiming a gun at him?
> A   Right. But it's also a swastika at the same time.
> Q   So the cross hair turns into a swastika?
> A   Right.

(Transcripts of Grand Jury Hearing at 327, *White*, 08 CR 851). This discussion regarding the posting on Overthrow.com suffers from the same tragic incompleteness that most of the government's evidence shares.

Here, the prosecutor attempts to show the grand jury that Defendant White has advertised or solicited the assassination of president-elect Obama. This evidence, if true, would certainly shock the conscience of the grand jury and make them more likely to indict White. The prosecutor failed to elicit any testimony that would put this particular post in context. The cover

5

of the article does read "Kill this Nigger? Negro Deification and the 'Obama Assassination' Myth." The second post, however, contained on the fourth page of Government Exhibit 1 continues and discusses the article that is contained within the aforementioned magazine. The article states:

> The controversial cover for a story on 'Negro Deification And The 'Obama Assassination 'Myth', looks at the role that Barack Obama's radical communist politics and Jewish backers have played in making his electoral career and how he plans genocide against white working people.
> The article also looks into the phony 'Obama Assassination' conspiracies that have circulated in the Jewish press, and how major Jewish newspapers, like the Washington Post, tried to promote white supremacist opposition to Obama through planted and stated newspaper articles.

(Transcripts of Grand Jury Hearing at 366, *White*, 08 CR 851). This is clearly not an advertisement for the assassination of Barack Obama. That fact would have been clear during the grand jury proceedings if the prosecutor discussed the article in context. Because the prosecutor chose to read only the parts of the article that would most inflame the emotions of the jury, it is clear that this evidence did substantially influence the grand jury's decision to indict White for allegedly soliciting someone to harm Juror A in violation of 18 USC § 373.

The prosecutor's presentation of evidence that was not relevant to the proceeding at hand, was taken presented of context, and was clearly used to scare the jury into indicting Defendant White can be seen only as a significant infringement on the grand jury's ability to exercise independent judgment. Despite this, the prosecutor continued to present irrelevant and highly prejudicial evidence to the grand jury which had a substantial effect on the grand jury's decision to indict.

During the same examination of the federal agent discussed above, the prosecutor asked the agent about an Overthrow.com post that White made regarding the Jena Six.[4] Specifically, the prosecutor asked about a posting entitled "Address of Jena 6 Niggers – In Case Anyone Wants to Deliver Justice." The posting listed the six African American students' names and addresses. The prosecution was sure to discuss this fact at length but failed to present the grand jury with the actual language that White used in the article asking for no more than phone calls. White's posting stated, "Six niggers are on trial in Jena, Louisiana. Five are currently out awaiting trial. Get in touch, and let them know that justice is coming." (Transcripts of Grand Jury Hearing at 409, *White*, 08 CR 851) There is no solicitation of other individuals to engage in any conduct other than phone calls, and certainly nothing that would constitute a felony. This evidence was again presented out of context and was presented to the grand jury in an incomplete manner. When these factors are combined with the race sensitive nature of the Jena Six issue, there can be no doubt that prosecution's presentation of this irrelevant and prohibited evidence substantially influenced the grand jury's decision to indict.

The prosecutor continued to present irrelevant evidence out of context in front of the grand jury. He next examined the federal agent about one of White's posts on Overthrow.com that involved Elie Wiesel. Before discussing the content of the posting, the prosecutor ensured that the grand jury knew that Elie Wiesel is a Holocaust survivor, an author, and a former Nobel Prize winner under the guise of showing "circumstances strongly corroborative" of White's intent to solicit harm to Juror A.

During the examination of the federal agent, the prosecutor illicted the following testimony:

---

[4] According to the grand jury transcript, the Jena Six case is "a civil rights base legal matter out of Jena, Louisiana" that involves six African-American individuals "either charged with or alleged to be involved with the beating of a white person." Transcript, page 347.

7

> Q   Okay. And once again can you read from this date of February 13th of 2007?
> A   "Where Elie Wiesel Lives in Case Anyone was Looking for Him."
> Q   Okay. Now, is Elie Wiesel a Holocaust survivor?
> A   I believe so.
> Q   And is Mr. Wiesel also an author and a former winner of a Nobel Peace Prize?
> A   Yes.
> Q   Okay. Now, beneath this article that states: "Where Elie Wiesel Lives in Case Anyone was Looking for Him," does the article list a birth date, purporting to be Mr. Wiesel's birth date as well as three addresses?
> A   Correct. And names of purported relatives.

(Transcripts of Grand Jury Hearing at 353, *White*, 08 CR 851). It was very convenient, however, that the prosecutor neglected to ask the agent to read the two sentences that immediately followed the title and immediately precede the addresses. Following the title, White wrote "Greenwich, Connecticut – In case anyone was looking for him. Don't do anything illegal…" *Government Ex. 9*. White clearly expressed his desire that readers of the article did not do anything illegal, which certainly removes this from the realm of "circumstances strongly corroborative" of White's alleged intent to solicit the harm of Juror A.

      Here, the prosecutor's conduct is apparent. The prosecutor used evidence of past acts that are irrelevant to the charge at hand and were taken so far out of context that the only way the evidence could have been used was to shock the conscience and scare the grand jury into indicting White. The fact that the prosecutor introduced evidence regarding president-elect Barack Obama and made certain to discuss at length the inflammatory portions of White's article, but failed to discuss the contents of the article whatsoever shows the desire to substantially influence the grand jury's decision to indict. Additionally, the fact that the prosecutor introduced irrelevant evidence regarding world famous Nobel Prize winner Elie Wiesel and discussed White's post regarding Mr. Wiesel, but did not include two sentences

8

which clearly show that White did not advocate illegal activity makes certain that the grand jury's decision to indict was not free from the substantial influence of the prosecutor's conduct

In presenting evidence to the Grand Jury to secure the Superseding Indictment, the government continued in it antics by soliciting information about the death of Judge Lefkow's family. Again having the agent read excerpts from the articles, and not the entire article.

To further exasperate the situation the following question is asked:

Q. It is indicative, is it not, a mental state that showing somewhat of a problematic condition?

A. That is correct.

By doing so, the government has no issues with an agent, without any foundation to training, testify as to a Defendant's mental condition based solely on postings on a website. Again, this conduct is indicative of abuse of the Grand Jury.

The Supreme Court, in United States v. Williams, 504 U.S. 36, 46, 112 S.Ct. 1735, 1741 (1992), held:

> Thus, *[Bank of Novia Scotia]* makes clear that the supervisory power can be used to dismiss an indictment because of misconduct before a grand jury, at least where that misconduct amounts to a violation of one of those "few, clear rules which were carefully drafted and approved by the Court and by Congress to insure the integrity of the grand jury's functions," [Mechanik, 475 U.S. at 74, 106 S.Ct. at 943 (O'CONNER, J., concurring in judgment.)].

The *Williams'* decision references those "standards of behavior for prosecutors (and others)," violations of which may warrant the exercise of the court's supervisory power. It is important to emphasize that nothing in *Williams* limits the court's power to dismiss an indictment as a result of constitutional violations. Indeed, what more important "rules" exist than those imposed by the United States Constitution, such as a defendant's rights under the Due Process Clause of the Fifth and Fourteenth Amendments, see *United States v. Kilpatrick*, 821 F.2d 1456, 1465 (10th Cir. 1987); *United States v. Samango*, 607 F.2d 877, 881 (9th Cir. 1979); *United*

9

*States v. Basurto*, 497 F.2d 781, 785 (9th Cir. 1974), and the Grand Jury Clause of the Fifth Amendment. See Red Elk, 955 F. Supp. at 1182 n.12. Moreover, one need not look to the Constitution to find the "rule" because F.R.Crim.P. 7(a) embodies the Grand Jury Clause of the Fifth Amendment. See Advisory Committee Notes (1944 Adoption) to Rule 7(a).

In Williams, the Court expressly held that the government is under no obligation to present exculpatory evidence to the grand jury. 504 U.S. at 50, 112 S.Ct. at 1743–44. "However, the government's creation or acceptance of an erroneous impression that related to such evidence could support a defendant's argument that a supposed mistake was intentional misconduct." *United States v. McDonald*, 61 F.3d 248, 253 (4th Cir. 1995). Notwithstanding Williams, "a prosecutor may not deliberately mislead a grand jury or instill false impressions to it in an effort to obtain an indictment." *United States v. Red Elk*, 955 F.Supp. 1170, 1182 (D.S.D. 1997).

In the case at bar, the cumulative effect on the grand jury's decisions to indict, arising from the many acts of improper evidence, is so staggering that it is respectfully submitted that dismissal of the pending indictment is warranted either on constitutional grounds or as an exercise of this Court's supervisory power.

## II.     The Indictment Must Be Dismissed Based on a Lack of Probable Cause

This Court must dismiss the indictment against Defendant White because there was a lack of probable cause on which to base the indictment.  As the Supreme Court announced in *Illinois v. Gates*, 462 U.S. 213, 230 (1983), probable cause should be based on a "totality-of-the-circumstances" approach.  Using this approach, the Court noted that the probable cause standard is a "practical, nontechnical conception."  *Id.*, at 231; *Brinegar v. United States*, 338 U.S. 160, 176 (1949).  The Court further elaborates by stating that "[i]n dealing with probable cause, … as the very name implies, we deal with probabilities.  These are not technical; they are the factual

and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Gates*, 462 U.S. at 231; *Brinegar*, 338 U.S. at 175. For the grand jury to indict based on probable cause, however, they must be given sufficient facts.

In this case, the grand jury indicted Defendant White without a sufficient basis of knowledge. White was charged under 18 U.S.C. § 373 for attempting to solicit harm to the person or property of Juror A. The charging statute upon which the grand jury predicated the indictment has three subsections. Subsection A states the offense, with subsection B providing for affirmative defenses and subsection C clarifying subsection B. The government presented evidence of the alleged crime along with prohibited evidence of past acts to the grand jury but provided no information regarding the affirmative defense detailed in Subsection B.

The Court in *Gates* specified that "probable cause is a fluid concept-turning on the assessment of probabilities in particular factual contexts…" 462 U.S. at 232. In this case, the particular factual context involved White posting political opinions on his website, Overthrow.com. The use of political hyperbole and headlines similar to that of a tabloid newspaper or sensationalist journalism was labeled as alleged threats and the solicitation of harm to individuals in the government's presentation to the grand jury. The government failed, however, to put any of the articles from Overthrow.com that it presented to the grand jury in context as discussed above. By picking and choosing incomplete portions of articles the government sought to prove that White had the "intent that another person engage in conduct constituting a felony" as specified in subsection A of the charging statute. *18 U.S.C. § 373(a)*. By picking and choosing which portions of the charging statute to explain to the grand jury, the government did not provide the grand jury with a sufficient basis on which to indict. The portions of the articles that the government consciously left out of the evidence presented to the

11

grand jury, included a number of White's writings which negate the requisite intent of subsection A and go towards showing an affirmative defense under subsection B.

If the grand jury is to properly base a finding of probable cause on the charging statute, then the government should ensure that the grand jury is aware of the statute in its entirety. Even if the grand jury finds that there is sufficient evidence to support subsection A of the charging statute, they very well may find that there is also sufficient evidence to support subsection B of 18 U.S.C. § 373 and not return an indictment. Because the grand jury was presented with insufficient evidence relevant to the charging statute, the superseding indictment should be dismissed for lack of probable cause.

**Conclusion**

For the foregoing reasons, this Court should dismiss the indictment, based on prosecutorial misconduct and a lack of probable cause, against Defendant William White.

Respectfully submitted on this 28th day of May, 2009.

_/s/ Nishay K. Sanan_____
Nishay K. Sanan

Law Office of Nishay K. Sanan
327 S. Plymouth Court
Suite 201
Chicago, Illinois 60604
312-692-0360