IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| United States of America | ) | |
| | ) | |
| v. | ) | No. 08 CR 851 |
| | ) | Honorable Lynn Adelman |
| William White | ) | |
| | ) | |
| | ) | |

## DEFENDANT'S MOTION FOR PRETRIAL RELEASE

**NOW COMES** the Defendant, WILLIAM WHITE, by and through his attorneys, Nishay Sanan and Chris M. Shepherd, and hereby moves this Honorable Court for an order granting release, under the strictest conditions available, pending his trial. In support thereof, the Defendant states:

### Facts and Procedural History

Defendant William White operated overthrow.com, a website on which he posted several political articles, one of which included the name, address, and phone number of a Juror in the Matthew Hale trial. *See United States v. Hale,* 448 F.3d 971 (7th Cir. 2006). The government alleges that on September 11, 2008, Defendant White posted an entry to the website overthrow.com titled "The Juror Who Convicted Matt Hale." The article contained the name, address, and phone number of Juror A from the 2004 trial of Matthew Hale. As a result of this posting, Defendant William White was charged with soliciting harm to a juror in violation of 18 USC § 373. The

felony offense underlying the 18 USC § 373 charge is of influencing or injuring a juror, in violation of 18 U.S.C. 1503.

On October 22, 2008, the United States District Court for the Western District of Virginia, Roanoke Division, on the government's motion, ordered pretrial detention and denied the Defendant bond. On December 5, 2008, a the Honorable William Hibbler conducted a review of that decision, and a hearing was held. Judge Hibbler denied Defendant White's motion for bond, and ordered continuing pretrial detention. On December 8, 2008, Defendant filed his notice of appeal and sought the Seventh Circuit's review of the pretrial detention order. The Seventh Circuit affirmed.

Soon thereafter, the Grand Jury issued a superseding indictment. In the superseding indictment, allegations are made involving the heinous murder of the family of Judge Joan Lefkow of the Northern District of Illinois. Based on the allegations made in the superseding indictment, Defendant White moved to recuse the Honorable William Hibbler, all other judges of the Northern District, and the U.S. Attorney's office in the Northern District. Defendant cited Title 28 of the United States Code, Section 455(a), which states that, "[a]ny justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." The government did not oppose the motion, and, on March 31, 2009, the Honorable William Hibbler granted Defendant

2

White's Motion to Recuse in order to "protect against the appearance of impropriety." *Defendant's Exhibit #1, Court's Order of Recusal.*

The case was transferred to this Court, and Defendant filed a motion to vacate all orders of the previous court on the grounds that they are tainted by a reasonable fear of that court's impartiality. As of June 10, 2009, the Court has not issued a decision on Defendant's motion to vacate. Defendant is filing this motion for pre-trial release, and jointly seeking to vacate the previous denial of bond, on the basis that the previous denial of bond was made by a Court whose impartiality could reasonably be questioned. *See Id.* Defendant respectfully requests that a fresh determination be made as to Defendant's eligibility for pretrial release by an impartial Court with no appearance of impropriety and with no reasonable question as to its impartiality, in order to protect Defendant's Eighth Amendment right to procedural and substantive Due Process.

## Argument

The Bail Reform Act (hereinafter, "Act") states that release shall occur unless the court determines "that such release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community." 18 U.S.C. § 3142(b). Release may be denied only when there are no conditions that will reasonably assure the appearance of the defendant and the safety of the community. *U.S. v. Hammond,* 204 F.Supp. 2d 1157, 1161 (E.D. Wis. 2002).

Section 3142(b) of the Act creates a rebuttable presumption in favor of release stating that release shall occur unless the court determines "that such release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community." The government bears the burden of proving by "clear and convincing evidence" that no combination of conditions will reasonably assure the safety of the community. 18 U.S.C. §3142(f)(2)(B).

The Bail Reform Act goes on to provide judicial officers with several pretrial custodial options. 18 U.S.C § 3142(a),(e). A defendant charged with an offense may be released on personal recognizance, released on conditions, temporarily detained to permit revocation of conditional release, or detained. *Id.*

The Court must consider a number of statutory factors in determining whether to release or detain a defendant: (1) the history and characteristics of the defendant, (2) the nature and circumstances of the alleged offense, and how they relate to, the nature and seriousness of the danger to the community, and finally, (3) the weight of the evidence against the defendant. *See* 18 U.S.C. §3142(g).

## I. The History and Characteristics of the Defendant

The Court must consider the history and characteristics of the Defendant in determining whether no conditions will reasonably assure the appearance of the defendant and the safety of the community. *Id.* These aspects include:

4

the defendant's physical and mental condition, family ties, employment, length of residence in the community, community ties, past conduct, criminal record, history of drug or alcohol abuse, and record of appearances at prior court proceedings, as well as whether the defendant was on conditional release of some sort at the time of the new offense the nature and circumstances of the offense. *Id.*

Mr. White is a 31 year old married man with one newborn daughter. He owns and operates White Homes and Land, LLC., a real estate concern holding title to over a dozen properties and land parcels. He has not been convicted of any crimes since he was a teenager, when he was convicted for battery.

On December 1, 2008, Dr. James Corcoran, M.D., a board certified psychiatrist examined Mr. White, interviewed his wife, and reviewed the blog posts and articles relied on by the government in their attempt to show Mr. White as a danger to the community. *See Defendant's Exhibit #2, Curriculum Vitae of Dr. James Corcoran, M.D.* Dr. Corcoran conducted a mental status examination of the Defendant, and concluded that Mr. White did not exhibit any characteristic symptoms of psychiatric illness. *See Defendant's Exhibit #3, Dr. James Corcoran's Diagnostic Report.* On December 5, 2008, Dr. Corcoran testified, under oath and subject to cross examination, that (1) he did not consider Mr. White to be a danger to himself, *Defendant's Exhibit #4, Direct Examination of Dr. Corcoran,* at p. 12, lines 1-3, (2) he did not consider

5

Mr. White to be a danger to the community, *id., at lines 4-23,* (3) Mr. White's articles and posts, while shocking, were indicative of a histrionic or narcissistic personality, not a dangerous one, *id.* at p. 15-16 and 20-21, and, (4) that Mr. White would be able to follow any conditions of bond that the court imposed. *Id.* at p. 23.

The government has not provided any evidence or testimony from a medical health professional contradicting Dr. Corcoran's findings.

The Act requires more evidence than what the government has thus far advanced to justify a finding that the defendant is a "clear and convincing" threat to the safety of the community. None of the history and characteristics of defendants typically found to justify pretrial detention exist in Mr. White's case. In Connecticut, in an unrelated case with factual parallels to the case at bar, a Defendant wrote in his online blog regarding several Connecticut state senators, the Defendant wrote that these officials "should be made an example of. Obey the Constitution or die." *See Defendant's Exhibit #5, News Article on Harold Turner, June 9, 2009.*

Mr. White is an established business man, journalist, and academic, who happens to concentrate his studies on theories of white supremacy. He has a wife and newborn girl. No threats were made, directly or indirectly, and no one has been harmed as a result of anything Mr. White has published. The defendant is presumed innocent and the government must offer more than the simplistic and erroneous arguments it has so far advanced in order to deprive the defendant of his important substantive and procedural Due Process right in remaining at liberty prior to trial.

II.   **The Nature and Circumstances of the Alleged Offense Indicate that Pretrial Release of the Defendant Will Not Endanger the Community**

At issue in the case at bar is an article posted to the website overthrow.com containing the name, address, and phone number of a juror who served at the trial of Matthew Hale.

William White is charged with violating 18 U.S.C. § 373. The felony offense underlying the 18 USC § 373 charge is of influencing or injuring a juror, in violation of 18 U.S.C. 1503. Specifically, the government alleges that on September 11, 2008, more than two years after the Seventh Circuit affirmed the conviction of Matthew Hale, *United States v. Hale,* 448 F.3d 971 (7th Cir. 2006), Mr. White posted an entry to the website overthrow.com titled "The Juror Who Convicted Matt Hale." The article contained the name, address, and phone number of Juror A from the 2004 trial of Matthew Hale. The government's indictment lists a number of prior articles posted to overthrow.com in an attempt to use those postings as corroboration of White's intent to solicit or persuade another person to injure Juror A, in violation of 18 U.S.C. 373.

Absent from the government's indictment is the context in which the article was posted. Mr. White operated overthrow.com for several years; he posted articles, commentary, and opinion on various newsworthy topics, including race, government, and politics.[1] In the days preceding the post, the

---

[1] Mr. White also owned and operated White Publications, LLC., published a monthly paper journal, and is the commander of the American National Socialist Workers' Party.

online community reported that Hale had filed a motion to overturn his
conviction on the grounds that Juror A bore an unfair prejudice against Hale
because the Juror personally knew one of the victims of the case. Mr. White,
who had previously written for the Russian newspaper Pravda, had
contributed pieces to the Washington Times, and published both an online
and hardcover political news journal, wrote a piece on the story. The article
registered his displeasure with the news that one of the Hale jurors had
personally known one of Hale's victims. The juror's name, address, and phone
number were previously published on other internet websites, and White
reproduced this information on his website. No threats or commands to harm
Juror A were made, and at no time was Juror A harmed or attacked as a
result of the news story.

The "nature" of the offense alleged by the government is unpopular
political speech protected by the First Amendment, not a "true threat" that
would justify pretrial detention as argued by the government. A "true threat"
is defined as "those statements where the speaker means to communicate a
serious expression of intent to commit an act of unlawful violence to a
particular individual or group of individuals." *Virginia v. Black,* 538 U.S. 343,
359 (2003).

In *Watts v. United States*, 394 U.S. 705, 706 (1969), the accused had
stated at a public rally that if he was ever drafted, he would not go and that if
he was ever made to carry a rifle, the first man he wanted to get in his sights

8

would be Lyndon Johnson. The Court held that the accused's statements regarding killing the President of the United States was constitutionally protected speech and was "political hyperbole" not a "true threat." *Id.* at 707-708.

The principle established in *Watts* is that while the First Amendment does not protect a true threat, "political hyperbole" is within the Constitution's protection. *Id.* 706-707. In determining whether the speech at issue was a true threat, the Court considered several contextual factors in determining whether speech is protected political hyperbole or unprotected true threats. *Id.* at 708. First, the Court noted that *Watts* had made a conditional statement made "expressly conditional on a trigger event – being drafted into the military – that removed the imminence of the threat." *Id.* Second, the statements were made in public on a topic of great national debate. *Id.* Third, the statement was not delivered to the alleged victim (President Lyndon Johnson), but instead, to a large crowd who reacted with laughter. *Id.*

Unlike the statement made in *Watts,* White made no threats. Rather, the name, address, and phone number of a Hale Juror, taken from the public record and other websites that had already posted the information, was posted. Like the statement in *Watts,* however, White's statement was made in public, over the internet. In addition, like *Watts,* White's article regarded a story circulating on the internet that Hale had filed a motion seeking to

overturn his conviction on the grounds that Juror A personally knew one of
Hale's victims and was therefore unfairly prejudicial. Again, like *Watts,* the
statement was not delivered to the putative victim (Hale Juror A) but rather,
to an online community regularly engaged in debate and discussion of
newsworthy topics.

The government has failed to provide any specific and quantifiable
evidence to demonstrate how these articles make Mr. White an imminent
danger to the community as required by this Circuit's precedent. *See e.g. U.S.
v. Motamedi,* 767 F.2d 1403, 1407 (1985)("[A] finding of danger to the
community [should] involve more specific and quantifiable evidence than…a
finding of risk of flight.") Instead, in its complaint, at the indictment, and
most recently, at the bond hearing, the government has relied on the
admittedly shocking content of Mr. White's articles to play on the fears and
emotions of the listener. But it is precisely this type of speech against which
suppression must be guarded most vigilantly. Otherwise, citizens are left
with a First Amendment that protects only popular or acceptable speech, or,
in other words, speech in no need of protection. As the Court stated in
*Terminiello v. City of Chicago*:

> "[a] function of free speech under our system
> of government is to invite dispute.  It may
> indeed best serve its high purpose when it
> induces a condition of unrest, creates
> dissatisfaction with conditions as they are, or
> even stirs people to anger.  Speech is often
> provocative and challenging.  It may strike
> at prejudices and preconceptions and have

10

profound unsettling effects as it presses for
acceptance of an idea."  337 U.S. 1, 4 (1949).

## III.   The Weight of the Evidence Against the Defendant

The weight of the evidence against the Defendant has been held to be the least important factor insofar as it creates a tendency for courts to make pretrial determinations of guilt, and the conflict that inquiry creates with the presumption of innocence. *United States v. Motamedi,* 767 F.2d 1403, 1408 (9th Cir. 1985). Nevertheless, in the case at bar, for the reasons stated above, the weight of the evidence is in the Defendant's favor and indicates that Defendant engaged in political free speech protected by the First Amendment, and did not write any pieces with the intent to physically harm another.

## IV. Conclusion

There exists a rebuttable presumption in favor of release; 3142(b) of the Bail Reform Act states that release shall occur unless the court determines "that such release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community." The government fails to meet its burden to prove by "clear and convincing evidence" that no combination of conditions will reasonably assure the safety of the community. 18 U.S.C. §3142(f)(2)(B).

Confined to this inquiry, and given the availability of the strictest alternative to pretrial detention, such as electronic monitoring, placement in

11

the custody of a family member, house arrest, restriction of access to the internet and/or a computer, and daily reporting to pretrial services, releasing Defendant White pending trial is appropriate. Defendant's pretrial release will not endanger the community's safety, and, simultaneously, will preserve Defendant White's constitutional right to substantive and procedural Due Process, as well as aid the Defendant in preparing his defense to the charges against him.

Wherefore, for all the reasons stated above, Defendant White, respectfully requests this Honorable Court release him pending trial and for any further relief this Honorable Court deems just and proper.

Respectfully Submitted,


/s/ Nishay Sanan                                    /s/ Chris M. Shepherd
Nishay K. Sanan                                     Chris M. Shepherd
327 S. Plymouth Ct.                                 327 S. Plymouth Ct.
Suite #201                                          Suite #203
Chicago, IL. 60604                                  Chicago, IL. 60604
(312) 692-0360                                       (312) 789-8050