UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 08 CR 851 |
| v. | ) | |
| | ) | Honorable Lynn Adelman |
| WILLIAM WHITE | ) | |

### GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS SUPERSEDING INDICTMENT AS VIOLATIVE OF THE FIRST AMENDMENT

The UNITED STATES OF AMERICA, by PATRICK J. FITZGERALD, United States Attorney for the Northern District of Illinois, respectfully submits the following response to defendant William White's motion to dismiss the superseding indictment in this matter as violative of the First Amendment. In support thereof, the government responds as follows:

### BACKGROUND

*Procedural History*

On October 21, 2008, defendant was charged in a one-count indictment. The indictment charged that from on or about September 11, 2008, through at least on or about October 11, 2008, in the Northern District of Illinois, Eastern Division, and elsewhere defendant, with intent that another person engage in conduct constituting a felony that has as an element the use, attempted use, or threatened use of force against the person of Juror A, in violation of the laws of the United States, and under circumstances strongly corroborative of that intent, solicited and otherwise endeavored to persuade such other person to engage in such conduct; in that defendant solicited and otherwise endeavored to persuade another person to injure Juror A on account of a verdict assented to by Juror A, in violation of Title 18, United States Code Section 1503; all in violation of Title 18, United States Code, Section 373.

On December 15, 2008, defendant filed a motion to dismiss the indictment as violative of the First Amendment. On January 26, 2009, Judge William J. Hibbler denied defendant's motion. On February 11, 2009, defendant was charged in a one-count superseding indictment. The superseding indictment maintained the single charge of soliciting a crime of violence in violation of Title 18, United States Code, Section 371, and added additional examples of the circumstances strongly corroborative of defendant's intent.

***Factual Background***

In or about January 2003, Matthew Hale, the leader of a white supremacist organization known as the World Church of the Creator, was charged in a federal criminal case in the Northern District of Illinois with solicitation of the murder of United States District Judge Joan Humphrey Lefkow and obstruction of justice. Hale was tried before a jury in the Northern District of Illinois, convicted of all charges, and sentenced to 480 months' imprisonment. Juror A was the foreperson of that jury.

On September 11, 2008, defendant caused a posting to be made to the front page of the website "Overthrow.com" entitled, "The Juror Who Convicted Matt Hale."[1] The entry read: "Gay anti-racist [Juror A] was a juror who played a key role in convicting Matt Hale. Born [date], [he/she] lives at [address] with [his/her] gay black lover and [his/her] cat [name]. [His/Her] phone number is [phone number], cell phone [phone number], and [his/her] office is [phone number]." The entry also featured a color photograph of Juror A. On September 12, 2008, defendant caused

---

[1]Although the government understands that testimony and evidence will be adduced at trial, as well as any hearing on defendant's motion, the following factual basis is provided in summary form and is merely intended to assist the Court in understanding the circumstances surrounding the indicted offense.

another posting to be made to the front page of "Overthrow.com" entitled, "[Juror A] Update - Since They Blocked the first photo." This entry read: "Gay anti-racist [Juror A] was a juror who played a key role in convicting Matt Hale. Born [date], [he/she] lives at [address] with [his/her] gay black lover and [his/her] cat [name]." [His/Her] phone number is [phone number], cell phone [phone number], and [his/her] office is [phone number]. Note that [University A] blocked much of [Juror A's] information after we linked to [his/her] photograph."

As outlined in the superseding indictment, the website Overthrow.com contained postings made at various times that displayed what purported to be the home address and/or other personal identifying information of individuals who were targets of criticism on Overthrow.com. Certain of these postings expressed the defendant's desire that acts of violence be committed against the individuals at the posted addresses. These postings were still readily available on Overthrow.com at the time the Juror A postings were made.

### Ruling on Prior Motion

As described above, the superseding indictment in this matter does not add additional charges to the single violation of 18 U.S.C. §371 alleged in the original indictment. Rather, the superseding indictment merely provides notice of additional circumstances, strongly corroborative of defendant's intent to solicit a crime of violence directed toward Juror A. Defendant's motion to dismiss the original indictment as violative of the First Amendment was denied by Judge William J. Hibbler. Defendant's instant motion to dismiss the superseding indictment is nearly identical to his first motion. While defendant is certainly not barred from bringing a similar challenge to his

attack of his first indictment, nor is this Court bound in any way by the prior court's ruling, this

Court should grant due deference to the ruling entered.

In making its ruling the prior court noted:

"This Court is mindful of the fact that the right to freedom of speech is a highly protected fundamental constitutional guarantee which cannot be abridged unless the speech is found to be such that it is outside constitutional protection. The defense takes the position that the alleged speech in this case, although considered crass and incendiary by many, is entitled to first amendment protection. This Court disagrees. If this defendant's publication were limited to personal comments regarding the propriety of the actions of Juror A and any displeasure he harbored against him/her those comments would be protected. When the defendant went further and listed personal contact information about Juror A combined with other postings which advocated violence towards identified individuals such as Juror A, he stepped beyond the protection of the first amendment. Upon review of the motions of the parties and the applicable law the motion of defendant to dismiss on first amendment grounds is DENIED."

As did the original indictment, the superseding indictment alleges that defendant listed personal

identifying information about Juror A, which when combined with other postings to his website,

advocated violence towards Juror A. As noted by the prior court, when defendant took such action,

he stepped beyond the protection of the First Amendment. Where the superseding indictment gives

rise to no new or novel First Amendment issues, and defendant's motion offers no new reason why

this court should find that the superseding indictment violates the First Amendment, this Court

should follow the precedent set by the prior court and deny defendant's motion.

## **ARGUMENT**

Defendant seeks dismissal of the superseding indictment as violative of the First

Amendment. While the protection of freedom of speech provided by the First Amendment is

certainly one of the cornerstones of the Constitution, in no way is defendant's conduct in this case

sheathed by this protection. Defendant's conduct is not protected free speech, but rather the

solicitation of a crime of violence. Words offered to provoke or incite specifically targeted and imminent violence are not protected by the First Amendment. Defendant's words are exactly that, a solicitation aimed to incite others to seek out and harm Juror A on account of the verdict assented to by Juror A in the Hale case. The superseding indictment is proper, it does not violate the First Amendment, and defendant's motion to dismiss should be denied.

### Bradenberg v. Ohio

Defendant begins his argument with an analysis of *United States v. Bradenberg*, 395 U.S. 444 (1969). In *Bradenberg*, the appellant, a Ku Klux Klan leader, was convicted under the Ohio Criminal Syndicalism statute for "advocat[ing]... the duty, necessity, or propriety of crime, sabotage, violence, or unlawful methods of terrorism as a means of accomplishing industrial or political reform" and for "voluntarily assembl[ing] with any society, group or assemblage of persons formed to teach or advocate the doctrines of criminal syndicalism." *Id.* at 444-5. In reversing the appellant's conviction, the Supreme Court stated "the guarantees of free speech and free press do not permit a State to forbid or proscribe advocacy of the use of force or of law violation except where such advocacy is directed to inciting or producing imminent lawless action and is likely to incite or produce such action." *Id.* at 447.

Contrary to defendant's position, the superseding indictment in this matter does not violate the standard announced in *Bradenberg* or any subsequent clarification of the standard from *Bradenberg's* progeny. In weighing whether defendant's posts pertaining to Juror A were directed to inciting or producing imminent lawless action and were likely to produce such action, the postings themselves cannot be viewed in a vacuum, but must be seen in the context of Overthrow.com as a whole. As alleged in the superseding indictment, the postings surrounding the Juror A material on

-5-

Overthrow.com clearly display the defendant's true intention, that Juror A's personal identifying information was posted as a means to incite or produce a crime of violence against Juror A. Viewing the surrounding circumstances was unequivocally intended by Congress, as the statute itself requires proof that a solicitation was made under circumstances strongly corroborative of intent.

In this case, the surrounding postings on Overthrow.com provide both the circumstances showing defendant's intent, and the circumstances providing that imminent lawless action was intended and likely. As a preliminary matter, it would be hard to provide a better template to create imminent lawless action than to provide a person intended to commit a crime with the name of an intended victim, a photograph to show what the victim looks like, and an address of where to find the victim. This is precisely the information provided in this case. Furthermore, when steps were taken by Juror A's employer to block portions of Juror A's personal identifying information, defendant took it upon himself to post the information again. With this specific information made available by defendant providing the roadmap of how to find Juror A, we must then turn to the surrounding postings which explain what defendant intended to occur once that map was followed to Juror A. Postings such as "[Individual B] is an enemy, not just of the white race, but of all humanity, and he must be killed. Find him at home and let him know you agree:[purported address of Individual B]," and "Addresses Of Jena 6 Niggers - In Case Anyone Wants To Deliver Justice," provide this second piece of the puzzle; that defendant provided personal identifying information so that others would use it to do violence. Applied to this case, the postings show that defendant intended for another person to commit a crime of violence against Juror A. Each of these postings were readily available on Overthrow.com, just a few mouse clicks away from Juror A's personal identifying information. In fact, in some cases,

the postings appeared right next to the Juror A information, as was the case with the Individual B posting and a posting depicting President-Elect Obama with cross hairs in the form of a swastika over his head.

With these postings establishing defendant's intent to incite an imminent crime of violence, it is important to note that defendant was not only acutely aware that segments of his intended audience for Overthrow.com were prone to violence, but also that defendant embraced this fact. Defendant was obviously aware of past white supremacist plots aimed at violence, as this matter arises out of the wake of Matthew Hale's failed solicitation to have a federal judge killed. Even more telling though, are defendant's own words from his website. As detailed in the superseding indictment, defendant was once asked for comment on how his views and the posting of Holocaust survivor Elie Weisel's information on Overthrow.com after he was attacked in a hotel should be construed. In response, defendant posted the following to Overthow.com: "Elie Wiesel should be afraid to walk out his front door but for the rightful vengeance of the white working people he and his holocaust lies have exploited.... Insofar as my views may have played a role in motivating Mr. Hunt [the person convicted of attacking Wiesel], I can only say that I hope to inspire a hundred more young white people to sacrifice themselves for our collective racial whole. The only thing more noble than sacrifice is victory." Similarly, in the wake of the murder's of Judge Lefkow's family members, defendant in a post raised the question of "whether it was just or unjust in this specific case for people who have been persecuted and denied their religion by the dictates of Judge Lefkow and the system she promotes to retaliate and wreck vengeance

against her." Defendant then answered his own question by stating, "In my view, it was clearly just, and I look forward to seeing who else this new white nationalist group of assassins kills next." Defendant's own words, such as these, provide the true nature of his intent that violence be conducted against those he disapproved of, such as Elie Wiesel, Judge Lefkow, and Juror A.

It is not possible to view the Juror A postings in isolation and ignore the context in which they were published, as defendant invites the Court to do in his motion. Def's Mot'n at Page 5, Footnote 4. Instead this Court must view defendant's postings in the same manner they were available to the public at large and in the manner demanded by the statute, as a whole. In viewing the postings as such, it is clear that defendant's conduct was directed to inciting or producing imminent lawless action and was likely to incite or produce such action. Accordingly, defendant's postings do not fall into the province of protected free speech under the standard announced in *Brandenberg*.

### NAACP v. Claiborne Hardware Co.

Defendant's reliance on *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886 (1982) is misguided. In *NAACP v. Claiborne Hardware Co*., the Supreme Court dealt with a series of events unfolding from an African-American boycott of certain white-owned businesses in Claiborne, Mississippi in the late 1960s. Defendant seeks to draw an analogy between the publishing of the names of people who violated the boycott in that case with the publishing of Juror A's personal identifying information. This analogy is both improper and not based on the facts of either case. In *NAACP v. Claiborne Hardware*, the topic of names of people crossing the boycott line came up

in multiple contexts.  In the context cited by defendant,  "names of boycott violators were read aloud at meetings at the First Baptist Church and published in a local black newspaper.  [In this context, the boycott organizers] sought to persuade others to join the boycott through social pressure and the 'threat' of social ostracism." *Id.* at 909-10.  In finding this to be protected free speech, the Supreme Court held that "[s]peech does not lose its protected character, however, simply because it may embarrass others or coerce them into action."  *Id.*  However, this is quite different from the issue of names that were recorded by members of the 'Black Hats' who recorded the names of boycott violators, which in some instances led to threats or violence.  The Supreme Court found that, "the evidence does support the conclusion that some members of each of these groups engaged in violence or threats of violence. Unquestionably, these individuals may be held responsible for the injuries that they caused; a judgment tailored to the consequences of their unlawful conduct may be sustained." *Id.* at 925-6.

The case at bar is much closer in similarity to the second situation than the first.  This is not a case where Juror A's name, photograph, and personal identifying information were made available to affect any form of change through social pressure or ostracism.  Rather this is a case, where Juror A's name and personal identifying information  were gathered by defendant and then broadcast to incite a crime of violence.  The exact type of lawless action that the Court found to unquestionably fall beyond the realm of constitutional protection.

### Hess v. Indiana

Defendant's reliance on *Hess v. Indiana*, 414 U.S. 105 (1973), is equally without merit.  In *Hess*, the statement "We'll take the fucking streets later" or "We'll take the fucking streets again"

-9-

was made in the presence of a sheriff during a Vietnam-era anti-war rally. The Court found that this language was in effect advocating the mere principle of the use of force, as opposed to advocating a specific and recognizable imminent lawless action, and as such was protected free speech. *Hess* at 108-9. The instant case is completely dissimilar. Here defendant is not advocating the mere abstract principle of violence, he is providing specific information for a specific intended victim under circumstances clearly indicating his intent that this person be harmed due to the verdict he/she assented to in the Hale trial.

In *United States v. Velasquez*, 772 F.2d 1348 (7th Cir. 1985), the defendants were convicted of violating 18 U.S.C. § 1513(a)(2), which reads: "Whoever knowingly engages in any conduct and thereby causes bodily injury to another person or damages the tangible property of another person, or threatens to do so, with intent to retaliate against any person for... any information relating to the commission or possible commission of a Federal offense, shall be guilty of a felony." In holding that the statute does not violate the First Amendment, the court stated:

> "The statute punishes the making of a threat to do bodily harm to or destroy or damage the property of the informant as punishment (retaliation) for his informing. Such a prohibition is not vague or overbroad. Government cannot be effective if it cannot punish people who intimidate witnesses or informants by threatening to hurt them or damage their property, and no form of words would be significantly clearer than that employed in this statute. The First Amendment is remotely if at all involved. A threat to break a person's knees or pulverize his automobile as punishment for his having given information to the government is a statement of intention rather than an idea or opinion and is not part of the marketplace of ideas."

As in *Valasquez*, the offense conduct in this case attacks the very fabric of effective government. Defendant solicited harm to Juror A, in direct retaliation for a lawful verdict assented to by Juror A in fulfilling his/her civic duty of jury service. The First Amendment does not and cannot provide any protection to such statements made in furtherance of such a crime. Defendant's target was

-10-

specific, the information he provided in how to find the target was specific, and the surrounding postings to Overthrow.com display his intent that harm should come to Juror A.   Under the precedence of *Hess* and *Valasquez*, this combination of factors completely removes defendant's speech from the umbrella of protection under the First Amendment.

**True Threat**

Defendant asserts that the government must also show that a true threat has been made.  Not so.  Defendant stands charged with the solicitation of a crime of violence against Juror A on account of the verdict assented to by Juror A in the Hale case.  This statute does not require a threat.  Rather, it requires that the solicitation be made under circumstances strongly corroborative of that intent; a requirement that has been detailed in full as alleged in the superseding indictment.  However, even assuming, *arguendo*, that the government must show a threat, the defendant's conduct constitutes a threat under the law. .  In *United States v. Hoffman*, 806, F.2d 703 (7th Cir. 1986), the Court held that in order for the government to establish a "true threat" it must demonstrate that the defendant made a statement "in a context or under such circumstances wherein a reasonable person would foresee that the statement would be interpreted by those to whom the maker communicates the statement as a serious expression of an intention to inflict bodily harm upon or to take the life" of the intended victim.  *Hoffman* at 707.  "The government is not required to establish that the defendant actually intended to carry out the threat... it is the utterance which the statute makes criminal, not the specific intent to carry out the threat." *Id.*

In the instant case, a reasonable person would interpret the defendant's actions as a serious expression of an intention to inflict bodily harm or take the life of Juror A in retaliation for the verdict assented to by Juror A in the Hale trial.  While it is evident that defendant sought to have

-11-

another person actually carry out this threat, since defendant solicited such action, as stated in *Hoffman*, the government need not prove that defendant intended to carry out the threat personally. Like *Hoffman*, it is the words uttered, in this case written, in the form of a solicitation to a crime, that make the language criminal and not protected by the First Amendment. A reasonable person in the situation of Juror A who visited Overthrow.com, would leave the experience with the unquestioned interpretation that the postings to Overthrow.com were a serious expression of an intention to inflict bodily harm upon or to take the life of the person. The reasonable response when seeing one's name, photograph, address, and phone numbers splashed across an internet page full of statements such as "Kill [Individual A]" and "Addresses Of Jena 6 Niggers - In Case Anyone Wants To Deliver Justice," would be to fear that one's life is in danger even as they sit in their own home.

The remainder of defendant's arguments surrounding true threats are recycled from the same flawed arguments made previously, seeking to have this Court view the Juror A postings in isolation from the context provided by Overthrow.com. These arguments fail for the reasons stated above, the website must be viewed in its entirety, as it was available to visitors to Overthrow.com between September 11, 2008 and October 11, 2008, in order to see defendant's speech for what it was, a solicitation to a crime of violence.

## **CONCLUSION**

For the reasons stated herein, the government respectfully requests that this Court deny

defendant's Motion to Dismiss the Superseding indictment in this Matter as Violative of the First

Amendment.

                                                 Respectfully submitted,
                                                 PATRICK J. FITZGERALD
                                                 United States Attorney

By:    s/ Michael J.  Ferrara           
        MICHAEL J.  FERRARA
        Assistant United States Attorney
        United States Attorney's Office
        219 South Dearborn Street, 5th Floor
        Chicago, Illinois  60604
        (312) 886-7649

Dated: June 15, 2009

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA )
                                                    )          08 CR 851
              v.                                    )
                                                    )          Judge Lynn Adelman
WILLIAM WHITE                                       )

## CERTIFICATE OF SERVICE

It is hereby certified that on June 15, 2009, I caused copies of the GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS SUPERSEDING INDICTMENT AS VIOLATIVE OF THE FIRST AMENDMENT to be served upon:

NISHAY K. SANAN
Attorney at Law
327 Plymouth Court, Suite 327
Chicago, IL 60604

by sending the same via U.S. Mail, on said date on or before 5:00 p.m.

Respectfully submitted,

PATRICK J. FITZGERALD
United States Attorney

By:      s/Michael J. Ferrara_____
         MICHAEL J. FERRARA
         Assistant United States Attorney
         219 South Dearborn,5th Floor
         Chicago, Illinois 60604
         (312) 886-7649