IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | 08 CR 851 |
| | ) | |
| v. | ) | Honorable Lynn Adelman |
| | ) | |
| WILLIAM WHITE | ) | **UNDER SEAL** |

## GOVERNMENT'S MOTION FOR AN ANONYMOUS JURY

The UNITED STATES OF AMERICA, through PATRICK J. FITZGERALD, United States Attorney for the Northern District of Illinois, respectfully moves this Court to empanel an anonymous jury in the trial of the above-captioned case. In support of its position, the government states the following.

1.      On February 11, 2009, defendant was charged in a one-count superseding indictment. The superseding indictment charged that from on or about September 11, 2008, through at least on or about October 11, 2008, in the Northern District of Illinois, Eastern Division, and elsewhere defendant, with intent that another person engage in conduct constituting a felony that has as an element the use, attempted use, or threatened use of force against the person of Juror A, in violation of the laws of the United States, and under circumstances strongly corroborative of that intent, solicited and otherwise endeavored to persuade such other person to engage in such conduct; in that defendant solicited and otherwise endeavored to persuade another person to injure Juror A on account of a verdict assented to by Juror A, in violation of Title 18, United States Code Section 1503; all in violation of Title 18, United States Code, Section 373. The government's proof will demonstrate that in or about January 2003, Matthew Hale, the leader of a white supremacist organization known as the World Church of the Creator, was charged in a federal criminal case in

the Northern District of Illinois with solicitation of the murder of United States District Judge Joan Humphrey Lefkow and obstruction of justice. Hale was tried before a jury in the Northern District of Illinois, convicted of all charges, and sentenced to 480 months' imprisonment. Juror A was the foreperson of that jury. The government's proof will further show that Juror A was specifically targeted by defendant on account of Juror A's service on the jury that convicted Hale.

2. It is the government's view that the nature of the charges and the evidence supporting them may well place jurors in reasonable apprehension for their safety. Moreover, the likelihood that white supremacists, who would be supportive of defendant, will attempt to have an improper impact on the jury's deliberations cannot be discounted. The government therefore believes that the fair and due administration of justice in the trial of this matter would best be served by nondisclosure to the parties and the public of the names and home or work addresses of prospective and empaneled jurors, as well as those of their spouses. The government thus proposes that the only information that should be divulged regarding home addresses should be a reference to the general area of a juror's residence. For example, a juror from the suburbs would be instructed to respond to questions about his or her residence as, "North suburbs, West suburbs, etc." Likewise, a juror who resides in Chicago would only reveal the geographical part of the city where he/she lives, for example, "Northside," "Southside," etc. In this manner, the attorneys and defendants will have enough information to determine if a particular juror is suitable to serve, without revealing the juror's exact residence.

3. The use of anonymous juries has been held constitutional and a matter properly committed to the discretion of the district court. *United States v. Crockett,* 979 F.2d 1204, 1215 (7th Cir. 1992). *See also, e.g., United States v. Talley,* 164 F.3d 989, 1001 (6th Cir. 1999); *United States*

2

*v. Edwards,* 303 F.3d 606, 613 (5th Cir. 2002); *United States v. Childress,* 58 F.3d 693, 705 (D.C. Cir. 1995). "Empaneling an anonymous jury is an extreme measure that is warranted only where there is strong reason to believe the jury needs protection from intimidating or prejudicial influences." *Edwards,* 303 F.3d at 613 (citing *United States v. Mansoori,* 304 F.3d 635 (7th Cir. 2002)). "This interest in juror protection must be balanced against the defendant's interest in effective *voir dire* and the presumption of innocence." *Edwards,* 303 F.3d at 613. A court therefore should not order the empaneling of an anonymous jury "without (a) concluding that there is a strong reason to believe the jury needs protection, and (b) taking reasonable precautions to minimize any prejudicial effects on the defendant and to ensure that his fundamental rights are protected." *Crockett,* 979 F.2d at 1215 (citing *United States v. Paccione,* 949 F.2d 1183, 1992 (2d Cir. 1991)).

4.      The use of anonymous juries is not limited to situations in which the court finds that the jurors are actually in danger, but rather, it is the jurors' *reasonable fear* for their safety that is of primary concern. *See, e.g., Crockett,* 979 F.2d at 1215-16; *United States v. Scarfo*, 850 F.2d 1015, 1025 (3rd Cir. 1988); *United States v. Thomas*, 757 F.2d 1359, 1364 (2d Cir. 1985). Courts have pointed to five factors that guide this Court in determining whether an anonymous jury is appropriate:

(1)      defendants' involvement in organized crime;

(2)      defendants' participation in a group with the capacity to harm jurors;

(3)      defendants' past attempts to interfere with the judicial process or witnesses;

(4)      potential that, if convicted, defendants will suffer a lengthy incarceration and substantial monetary penalties; and

(5)      extensive publicity that could enhance the possibility that jurors' names would become public and expose them to intimidation and harassment.

3

*Mansoori*, 304 F.3d at 649.

5.     Courts are particularly apt to empanel anonymous juries when the case involves organized crime.  However, that a defendant is allegedly involved in organized crime is insufficient as the sole basis for juror anonymity; "something more" is necessary to justify anonymity. *Mansoori,* 304 F.3d at 649, 651.

> [S]omething more can be a demonstrable history or likelihood of obstruction
> of justice on the part of the defendant or others acting on his behalf or showing
> that trial evidence will depict a pattern of violence by the defendant and his
> associates such as would cause a juror to reasonably fear for his own safety.

Id. at 651 (citing *Crockett,* 979 F.2d at 1216).  Moreover, neither proof of a history of tampering with jurors, nor an inclination to tamper with jurors, is necessary to justify an anonymous jury. *United States v. Edmond,* 52 F.3d 1080, 1091 (D.C. Cir. 1995).  "The relevant inquiry is whether the defendants have ever tried to interfere with the judicial process in general[.]"  *United States v. Infelise,* 1991 WL 246557, at *2 (N.D.Ill. September 16, 1991); *see Edwards,* 303 F.3d at 613-15 (no demonstrated indication of likely juror interference but past charges of witness tampering and public corruption coupled with intense media interest justified anonymous jury).

6.     The utilization of an anonymous jury does not require that each and every one of the five factors commonly considered in assessing the need for and propriety of its use be established. Besides the factors listed above, "Other circumstances may also justify its use. . . . District courts should look to the `totality of the circumstances.'"  *United States v. Branch,* 91 F.3d 699, 724 (5th Cir. 1996).  Thus, the use of an anonymous jury has been upheld when physical safety is not an immediate concern, but a case "attracts unusually large media attention or arouses deep passions in the community." *United States v. Koubriti,* 252 F.Supp.2d 418421 (E.D. Mich. 2003).  *See, e.g.*,

*Edwards*, 303 F.3d at 613-15 (highly publicized and emotionally charged fraud and conspiracy trial of a long-time governor with no indication of likely juror interference); *Branch,* 91 F.3d at 723-25 (upholding anonymous jury in emotionally-charged and publicized case against members of the Branch Davidian sect despite total absence of indications that defendants would interfere with jurors); *United States v. Dakota,* 197 F.3d 821, 827 (6ᵗʰCir. 1999) (use of anonymous jury in bribery and tax fraud case with no threat of juror harm to minimize prejudicial effects of pretrial publicity and emotional political atmosphere that created a risk of jury intimidation and improper influence). *See also United States v. Vario,* 943 F.2d 236, 240 (2d Cir. 1991) (reasoning in construction industry fraud case with no juror safety issues but detailed in general distribution newspaper cover story that "[p]re-trial publicity may militate in favor of an anonymous jury because it can enhance the possibility that jurors' names would become public and thus expose them to intimidation by defendants' friends or enemies or harassment by the public." (Citations and internal quotations omitted)).

7.    In viewing the totality to the circumstances, this case meets each of the five factors listed in *Mansoori*.  First, while the superseding indictment does not allege that defendant is a member of a specified organized crime group, the charges do allege that defendant had a known audience of white supremacist activists and sympathizers to whom he directed his solicitation.  The indictment charges, and the proof at trial will show, that defendant was aware of violent actions performed by such individuals in the past and that it was defendant's intent to incite such violent action against the person of Juror A.   Again, in viewing the totality of the circumstances, this identifiable target audience of defendant's solicitation may be considered akin to a traditional organized crime group in that it is a core audience of people who share similar beliefs and may be

5

motivated to take violent action on account of those beliefs.

8.      Second, the charged conduct here includes a form of obstruction of justice in that defendant specifically targeted a former federal juror on account of a verdict rendered during that juror's service.  In light of the second and third *Mansoori* factors (the defendants' participation in a group with the capacity to harm jurors and the defendants' past attempts to interfere with the judicial process or witnesses), the jury in the instant case will hear a great deal of evidence that defendant was aware of violent actions by white supremacists in the past and that he intended to target future violence against Juror A, all on account of Juror A's past service and the verdict rendered in the Hale case.  This form of obstruction could very easily create the impression in the minds of the jurors who will hear this case (or in actuality), that such action might be turned towards them.  Under less obstructive circumstances, the use of an anonymous jury has been upheld.  *See United States v. Rosado,* 728 F.2d 89, 93-95 (2d Cir. 1984) (upholding challenge to the adequacy of the district court's explanation to the jury of its reason for using anonymous jury selection technique in criminal contempt trial against FALN members).

9.      The fourth *Mansoori* factor is whether defendants face substantial penalties should they be convicted at trial. While any sentence would ultimately be for this Court to determine, defendant is facing a substantial penalty in that he would likely be incarcerated for a period of time following a conviction in this case.

10.      The fifth and final *Mansoori* factor, publicity, is also present to a certain degree. While the coverage of this case is not at a level that would prejudice defendant, it can reasonably be expected that the trial of this matter will be the subject of some form of coverage by the media. Such publicity, even in a limited form, enhances the possibility that public disclosure of jurors'

names would leave them fearful of being exposed to intimidation and harassment.

11.     Viewed in their totality, the *Mansoori* factors point to the appropriateness of an anonymous jury, as proposed by the government in this case. The competing concerns are twofold. The first concern is that employing an anonymous jury would somehow impact negatively on the presumption of innocence.    The Court can take several steps to neutralize any impact that an anonymous jury might have on the trial process. The Court will, of course, instruct the jury before selection, after selection and before the trial, as well as before deliberations, that defendants are presumed innocent. Additionally, the Court could inform the jury that the technique is simply one of a number of procedures used by federal courts to avoid contact between jurors and the parties and to ensure that both sides receive a fair and impartial determination of the case by the jury. This explanation has been given by Judge Holderman and approved by the Seventh Circuit. *Crockett,* 979 F.2d at 1217. The Court could further inform the jury that the technique is being employed to ensure that the proceedings are conducted without interference, intrusion or harassment from the media or other external influences, or alternatively, because of the public attention generally surrounding the case. *See, e.g., Branch,* 91 F. 3d at 724 (noting that trial judge explained the anonymity procedures as a response to intense trial publicity, polled the jury for any bias, and reaffirmed the defendants were entitled to a presumption of innocence).

12.     The second potential concern is that an anonymous jury might adversely impact the defendant's ability to effectively *voir dire* the *venire.* Jury selection in this case will no doubt be conducted through in-depth *voir dire* that will allow an impartial jury to be selected in a highly informed manner. As the Seventh Circuit held in *Crockett,* defendant's "fundamental right to an unbiased jury is adequately protected by the court's conduct of a *voir dire* designed to uncover

bias as to issues in the case and as to the defendant himself." *Crockett,* 979 F.2d at 1216, *citing Paccione,* 949 F.2d at 1142; *Vario,* 943 F.2d at 242 (internal quotations omitted).

  WHEREFORE, the government respectfully requests that the Court empanel an anonymous jury as suggested herein.

       Respectfully submitted,

       PATRICK J. FITZGERALD
       United States Attorney

By:  s/ William Hogan     
    William Hogan
    Assistant U.S. Attorney

    s/Michael Ferrara     
    Michael Ferrara
    Assistant U.S. Attorney

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | 08 CR 851 |
| v. | ) | |
| | ) | Judge Lynn Adelman |
| WILLIAM WHITE | ) | |

## CERTIFICATE OF SERVICE

It is hereby certified that on July 2, 2009, I caused copies of the GOVERNMENT'S MOTION FOR AN ANONYMOUS JURY to be served upon:

NISHAY K. SANAN

Attorney at Law

327 Plymouth Court, Suite 327

Chicago, IL 60604

by sending the same via U.S. Mail, on said date on or before 5:00 p.m.

Respectfully submitted,

PATRICK J. FITZGERALD

United States Attorney

By:     s/Michael J.  Ferrara

MICHAEL J. FERRARA

Assistant United States Attorney

219 South Dearborn,5th Floor

Chicago, Illinois 60604

(312) 886-7649

9