IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | |
| ) | |
| WILLIAM WHITE ) | No. 08 CR 851 |
| ) | |
| ) | Judge Lynn S. Adelman |

**SENTENCING MEMORANDUM AND OBJECTIONS TO PSR**

NOW COMES Defendant, WILLIAM WHITE, by and through his attorneys, NISHAY K. SANAN and CHRIS SHEPHERD, and respectfully submits to this Honorable Court his Sentencing Memorandum and Objections to PSR, and in support states as follows:

### BACKGROUND

On June 17, 2008 prosecutors in the Northern District of Illinois filed a one count complaint against Defendant White, alleging that he had solicited the harm of an individual now known as Mr. Mark Hoffman.[1] IL Docket No. 1; PSR p. 3. Following the Complaint, a Grand Jury in the Northern District of Illinois returned a one count Indictment alleging a violation of *18 U.S.C. § 373*. IL Docket No. 5; PSR p. 3. Similar to the Complaint, the Indictment alleged that Defendant White solicited the harm of Mr. Mark Hoffman or his property. In addition to the acts alleged to be part of the crime, the Indictment also specified numerous other, unrelated acts

---

[1] Throughout this Memorandum, there will be numerous references to the dockets of Defendant White's cases in the Northern District of Illinois and the Western District of Virginia. Case number 2008-CR-00851 in the Northern District of Illinois will be cited as "IL Docket No…" while case number 2008-CR-00054 in the Western District of Virginia will be cited as VA Docket No…" when Defendant references particular, docketed documents. Additionally, Probation Officer Rice's Presentence Investigation Report will be cited as "PSR," while the Government's Version of the Offense will be cited as "GT."

which the Government believed represented circumstances strongly corroborative of Defendant White's intent to harm the person or property of Mr. Hoffman. *Id*.

Shortly thereafter, on October 22, 2008 FBI agents in the Western District of Virginia arrested Defendant White and transported him to the Northern District of Illinois. PSR p. 3. Then on November 12, 2008 Defendant White appeared before Judge Hibbler for his arraignment, pleading not guilty. *Id*. Judge Hibbler ordered that Defendant White remain detained on December 5, 2008. *Id*. Less than one week later on December 11, 2008, a Grand Jury in the Western District of Virginia indicted Defendant White for violations of *18 U.S.C. §§ 875(b)*, *(c)* and *1512(b)(1)*. VA Docket No. 11; PSR p. 4.

The Virginia Indictment alleged that Defendant White sent threats via email to a Citibank employee and numerous others. VA Docket No. 11. The Indictment sets forth the alleged violations by showing how White used Overthrow.com and his Vanguard News Network, in addition to emails to create the threatening communications. The Indictment names JP as the victim of Counts One and Two, LP as the victim of Count Four, KK as the victim of Count Five, RW as the victim of Count Six and an unspecified number of African American tenants. *Id*. at 16-18. The only common trait that any of these victims share is that they are listed in the Indictment together.

Although the Grand Jury returned an indictment in Virginia, Defendant White remained in the Northern District of Illinois to face prosecution in Case Number 2008-CR-00851. As Defendant White sat in the Metropolitan Correctional Center ("MCC") in Chicago, a Grand Jury in the Northern District of Illinois returned the Superseding Indictment that merely alleged more conduct which the Government believed was corroboration of White's intent. PSR, p. 3.

After the court granted Defendant's motion for a substitution of judge, the court put the Honorable Judge Adelman from the Eastern District of Wisconsin in charge of the case. Judge Adelman reviewed and re-evaluated Defendant's pretrial motions. In particular, Judge Adelman examined Defendant's Motion to Dismiss the Indictment Based on First Amendment Grounds. On July 21, 2009 Judge Adelman correctly dismissed the Superseding Indictment. PSR, p. 4. Three days later Defendant White was released from custody for his case in the Northern District of Illinois and transferred to the Western District of Virginia to face charges there.

Shortly after his transfer to the Western District of Virginia, Defendant White faced trial on seven counts which the Grand Jury had previously charged. Just in time for Christmas, the jury in White's Virginia trial convicted him. VA Docket No., 137, pp. 1-2. On December 18, 2009, the jury found Defendant White guilty of Counts One, Three, Five and Six. *Id*.

On February 4, 2010, the Judge in Virginia partially granted Defendant White's Rule 29 Motion for Judgment of Acquittal. The judge held that, with regard to Count Six, there "was 'no substantial evidence that would permit any rational trier of fact to find the Defendant guilty.'" VA Docket 155, pp. 31-32; *citing United States v. Capers*, 61 F.3d 1100, 1108 (4th Cir. 1995). Defendant White's partial success in defending baseless claims came to an end soon thereafter.

On August 16, 2010, the Seventh Circuit Court of Appeals reversed Judge Adelman's decision to dismiss the Superseding Indictment out of the Northern District of Illinois. The Seventh Circuit held that the jury must decide whether Defendant White's intent in posting the articles on Overthrow.com violated *18 U.S.C. § 373*. Once the decision was given to the jury, however, Judge Adelman would be free to dismiss the case on First Amendment grounds.

During this time, Defendant White was serving the length of his prison term in the Western District of Virginia at FCI Beckley in West Virginia. Prior to the end of his sentence of

3

30 months in the Virginia case, the Government brought Defendant White back to the Northern District of Illinois for prosecution in the instant case.

On January 5, 2011, the jury in Defendant White's Illinois case convicted him on the single charged count. PSR, p. 4. Judge Adelman entered a Judgment of Guilt and numerous post-trial motions were filed by Defendant White, which have yet to be decided. Sentencing is currently scheduled for April 6, 2011.

## OBJECTIONS

Defendant White objects to the following sections of the PSR:

1. Lines 123 through 127 as explained below.
2. Lines 128 through 134 as explained below.
3. Line 154 as explained below.
4. Lines 178 through 183 as explained below.
5. Lines 184 through 200 as explained below.
6. Lines 203 through 205 as explained below.

## ARGUMENT

On January 12, 2005, the Supreme Court ruled that its Sixth Amendment holding in *Blakely v. Washington*, 124 S. Ct. 2531 (2004) and *Apprendi v. New Jersey,* 530 U.S. 466 (2000) applies to the Federal Sentencing Guidelines. *United States v. Booker*, 125 S.Ct. 738, 756 (2005).The Court found "no relevant distinction between the sentence imposed pursuant to the Washington statutes in Blakely and the sentences imposed pursuant to the Federal Sentencing Guidelines" in the cases before the Court. *Id*. at 751. Based on this conclusion, the Court further found those provisions of the Federal Sentencing Reform Act of 1984 that make the Guidelines mandatory, *18 U.S.C. § 3553(b)(1)* or which rely upon the Guideline's mandatory nature, *18 U.S.C. § 3742(e)*, incompatible with its Sixth Amendment holding. *Booker*, 125 S.Ct. at 756. Accordingly, the Court severed and excised those provisions, "mak[ing] the Guidelines

effectively advisory." Id. at 757. Instead of being bound by the Sentencing Guidelines, the Sentencing Reform Act requires a sentencing court to consider Guidelines ranges, see *18 U.S.C.A. § 3553(a)(4)* (Supp.2004), but it permits the court to tailor the sentence in light of other statutory concerns as well.[2] *See* § 3553(a); *Booker*, 125 S.Ct. at 757. Thus, under *Booker*, sentencing courts must treat the guidelines as just one of a number of sentencing factors set forth in *18 U.S.C. § 3553(a)*.

Even prior to *Booker*, however, the possibilities for a sentencing judge to depart from the guidelines were nearly limitless. As the Court explained in *Koon v. United States*, 518 U.S. 81, 113 (1996):

> [it] has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue.

*Id*. Thus, long before the Supreme Court explicitly stated that the Guidelines were not mandatory in *Booker*, the Court afforded judges the ability to depart from those strict requirements in numerous circumstances. Now in the post-*Booker* era and in light of the statutory considerations of *18 U.S.C. § 3553(a)*, courts are able to consider many factors and encouraged to treat each and every case as a distinct entity.

Under *18 U.S.C. § 3582*, imposition of a term of imprisonment is subject to the following limitation: in determining whether and to what extent imprisonment is appropriate based on the *Section 3553(a)* factors, the judge is required to "recognize[e] that imprisonment is not an appropriate means of promoting correction and rehabilitation." Under *18 U.S.C. § 3661*, "no limitation shall be placed on the information concerning the background, character, and conduct

---

[2] As the *2010 Amended Sentencing Guidelines* explain in the introductory comments, the Guidelines were only designed to carve out a "heartland" of typical cases, one in which the Guidelines contemplate the conduct described therein. Chp. 1, pt. A, p. 6.

of [the defendant] which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." This statutory language overrides the now-advisory policy statements in Part H of the sentencing guidelines, which list as "not ordinarily relevant" to sentencing a variety of factors such as the defendant's age, educational and vocational skills, mental and emotional conditions, drug or alcohol dependence, and lack of guidance as a youth. *See U.S.S.G. § 5H1*.

       This Court's ultimate sentence is reviewed for reasonableness. *Gall v. United States*, 552 U.S. ----, 128 S.Ct. 586, 594, 169 L.Ed.2d 445 (2007). Whether this Court's sentence is substantively reasonable will be reviewed for abuse of discretion. *See Gall at 5*94-95. ("Regardless of whether the sentence imposed is inside or outside the Guidelines range, the appellate court must review the sentence under an abuse-of-discretion standard."). Consequently, this Court must follow the proper procedure in calculating the guideline range, and then treat the guidelines as advisory while selecting a sentence based on all *Section 3553(a)* factors. *Id.* The court must adequately explain the basis for the sentence. *Id*. at 595. Based on the Guidelines and *§ 3553* factors, this Court should grant Defendant White a sentence of probation or time served in this case.

    **I.**    **Defendant White is the Victim of Sentencing Manipulation by the Government**

    In this case, Defendant White suffers from sentencing manipulation by the Government, albeit not in its traditional sense. Sentencing manipulation occurs "when the government engages in improper conduct that has the effect of increasing a defendant's sentence." *United States v. Garcia*, 79 F.3d 74, 75 (7th Cir. 1996); *see also United States v. Cotts*, 14 F.3d 300, 306 n. 2 (7th Cir. 1994). In *Garcia* as well as in *Cotts*, the defendants argued that they should have been arrested after the first undercover buy of controlled substances from or by them, rather than

6

have the Government merely wait until the defendant's had purchased enough to guarantee a substantial sentence. In its opinion in *Garcia*, the Seventh Circuit squarely rejected the sentencing manipulation argument as an appropriate defense in such a situation. The court stated that "we now hold that there is no defense of sentence manipulation in this circuit." *Id*. Despite this seemingly blanket holding, the court went on to further explain its justification for such a ruling. The Court found that "[a] suspect has no constitutional right to be arrested when the police have probable cause." *Id*.; *Hoffa v. United States*, 385 U.S. 293, 310 (1966).

The perfect example of the typical sentencing manipulation case which has been rejected in this Circuit is embodied in *United States v. Turner*, 569 F.3d 637 (7th Cir. 2009). In *Turner*, the defendant pled guilty before Judge Der-Yeghiayan in the Northern District of Illinois to knowingly and intentionally distributing at least five grams of a mixture or substance containing crack cocaine. The court sentenced the defendant to 136 months in prison. *Id*. at 639. On appeal the defendant argued, in part, that his sentence had been manipulated because the Government could have arrested him and convicted him based on the evidence they gathered during the first controlled buy of crack cocaine. *Id*. at 641. It is clear from this case and others that the Seventh Circuit does not recognize sentence manipulation as a viable claim when dealing with drug buys or stings. *Id*.; *see United States v. Garcia, supra*, *United States v. White*, 519 F.3d 342, 346 (7th Cir. 2008). This case, however, is different.

This case is distinct from any of those cited above because Defendant White is asking this Court to consider sentence manipulation not with regard to drugs, but rather with regard to the Government's choice to spread Defendant's resources thin and subject him to punishments for the same case in two separate locations. Additionally, this Circuit has not held that sentence manipulation could not be used as a mitigating factor for consideration under the rubric of *18*

*U.S.C. § 3553(a)*. As such, this Court should feel free to apply sentencing manipulation to the case at hand.

In the case of Defendant White, the Government did not merely observe and record illegal conduct on the part of White and wait until they had enough evidence against him to ensure a lengthy sentence. Instead, the Government divided one case and one investigation in half, thereby ensuring Defendant White would be prosecuted and hopefully sentenced in two separate districts. If such a series of events came to fruition (as it since has) Defendant White would then be subject to two separate sentences, to run consecutively, for the same conduct, rather than a single sentence which would run concurrently for conduct in the same case.

In her PSR, Officer Rice describes her conversation with Special Agent Mazzola regarding the investigation in White's case in the Northern District of Illinois as compared with the investigation in the Western District of Virginia. PSR, p. 5. Officer Rice states that "[t]he agent explained that the two investigations were separate, and the victims, circumstances, and charges are very different in each case." *Id*. Not everyone agrees on this premise though. In the Government's Version of the Offense as attached to the PSR, AUSA Ferrara explains that "[t]he Defendant's conviction in Virginia is similar to his offense here [Northern District of Illinois] in that it also involved the use of his website as a vehicle to commit crimes against victims that the defendant viewed as his enemies for one reason or another." GT, p. 6. Clearly there is some disagreement as to how similar the investigations were, but common sense tends to show that Mr. Ferrara is correct.

The Virginia Indictment begins by discussing Defendant White's use of Overthrow.com to post his opinions and articles. VA Docket No. 11, pp. 1-2. The Indictment then goes on to discuss the articles which Defendant White authored regarding Elie Weisel and Richard

8

Warman. *Id*. at 2-3.  This, of course, seems similar to the Superseding Indictment in the Northern District of Illinois.  The natural question is why the Superseding Indictment regarding Mark Hoffman was brought in the Northern District of Illinois instead of as part of the prosecution brought in Virginia.  The easy, yet incorrect, answer is that Mr. Hoffman, the victim, was located in the Northern District of Illinois.

In the Virginia Indictment, Count One alleges that Defendant White made threats against JP, an employee of Citibank located in Kansas City, Missouri.  VA Docket No. 11, p. 4.  Count Four alleges that Defendant White made threats against LP, a journalist located in Bowie, Maryland.  *Id*. at p. 8.  Count Five relates to an individual known as KK, a professor and administrator at the University of Delaware in Newark, Delaware.  *Id*. at 11.  Count Six involves RW, a Canadian civil rights attorney located in Canada.  *Id*. at 13-14.  These individuals are not located in the Western District of Virginia and yet, the United States Attorney's Office in that District was able to put together an Indictment that involved the threats of those geographically diverse people.  So why was a prosecution for the solicitation of harm to Mark Hoffman not brought in the same Indictment?  All answers point to sentence manipulation.

The only part of the current Illinois prosecution that is located in Chicago is the victim.  As discussed in Defendant White's original Motion to Transfer Venue (IL Docket No. 28), all other evidence and investigating agents were located in the Western District of Virginia.  Defendant hosted and made changes to the website Overthrow.com.  The FBI determined that, as of September 15, 2008, the IP address of Overthrow.com was 1.107.40.66.  *Id*. at 2.  This IP address is owned by AT&T World Net Services and leased to ACC-White Homes and Land LLC ("ACC-White").  ACC-White was a company owned and operated by the defendant.  The IP

9

address of 1.107.40.66 terminated at a computer physically located at 1602 Paterson Avenue Southwest, Roanoke, Virginia 24016. White also owned this property.

After recovering the computer and server at 1602 Paterson Avenue Southwest, the FBI determined that another computer and server were also being used to update Overthrow.com. IL Docket No. 28, p. 2. The second server had an IP address of 68.106.93.214, which was assigned to Cox Communications. White owned Cox Communications and the address associated with that account and business was White's residence at 3350 Clay Creek Boulevard, Apartment 4, in Roanoke, Virginia. *Id*.

As discussed at trial, once agents executed the search warrant on Defendant White's home in Virginia, they recovered all physical evidence in this case from that location. All of the evidence and all of the alleged crimes occurred in Virginia, and yet the Government decided to bring a One Count prosecution against Defendant White at the same time he was facing a Six Count prosecution in Virginia. Again, to use AUSA Ferrera's words, the two prosecutions were similar because Defendant White used "his website as a vehicle to commit crimes against victims that the defendant viewed as his enemies…" GT, p. 6. The fact that the prosecution in Virginia involved victims spread throughout the country and numerous different charges coupled with the fact that all of the physical evidence in both the Virginia and Illinois cases was located in Virginia make very clear that the Illinois prosecution should have been brought at part of the Virginia case. The fact that the two were kept separate can only be attributed to sentence manipulation.

Defendant White has already served his 30 month sentence stemming from his Virginia conviction. If he had been convicted of soliciting the harm of Mr. Hoffman in that same case, his sentence may have been increased slightly, however, it is clear that he would not be facing an

entirely separate sentence to run consecutively as is the case with the Illinois prosecution. The Government's conduct is nothing short of a new, special brand of sentence manipulation which this Circuit has not evaluated and which this Court is free to use as a reason for giving Defendant White probation or time served in this case.

## II.     Defendant White's Criminal History is Overstated

United States Sentencing Guideline § 4A1.3(b)(1) provides defendants with the possibility of a downward departure if:

> reliable information indicates that the defendant's criminal history category substantially over-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes, a downward departure may be warranted."

*Id*. In this case, there is very reliable information to indicate that Defendant White's criminal history over-represents the seriousness of his criminal history.

With regard to Objection 4 above, lines 178 and 179 of the PSR do not properly add Defendant White's prior crimes to his Criminal History Category. PSR, p. 9. In lines 178 and 179, Probation Officer Rice cites a simple assault for which Defendant White was convicted of on February 17, 1999 and was released from custody on March 14, 1999. *Id*. Probation Officer Rice cites *United States Sentencing Guideline 4A1.1(c)* as her reason for adding one point onto White's criminal history. This additional point is inaccurate.

Section 4A1.1(c) states that the preparing officer should "add 1 point for each prior sentence not counted in (a) or (b), up to a total of 4 points for this subsection." *Id*. The notes to this section specifically state:

> Certain prior sentences are not counted or are counted only under certain conditions:

> A sentence imposed more than ten years prior to the defendant's commencement of the instant offense is not counted. See §4A1.2(e).

Whether we use Defendant White's date of conviction or date of release from prison as the start of the ten year period, White's conviction for the instant offense occurred on January 5, 2011. PSR, p. 4. The ten year term had lapsed pursuant to Officer Rice's cited section of 4A1.1(c) and the applicable notes. Thus, the additional point listed on lines 178 and 179 is not applicable in this case and reflects an overstated criminal history.

As reflected in the above-listed objections, Defendant White's criminal history as shown in lines 184 through 200 is substantially overstated. Lines 184 through 200 hold Defendant White responsible for the Government's decision to take a single case and split it into two separate prosecutions. The Government has no reasonable excuse for prosecuting Defendant White as explained above. Defendant's sentence from his Virginia conviction should be treated as part of the Illinois prosecution and, thus, not a prior sentence which deserves three criminal history points under § 4A1.1(a). Thus, Defendant White should be sentenced to probation or time served in this matter (this Court should also take into consideration that White served time from his arrest on this case until his transfer from this district in custody sicne he was denied bond).

### III. Defendant White's Offense Level is Inaccurately Calculated

Defendant White objects to lines 123 through 134 as irrelevant assertions with no support in law. Officer Rice has asserted that "case law supports" the enhancement for obstruction of justice yet cites no such support. PSR, p. 6. This Court should give bald assertions the same amount of weight as support provided: none. Additionally, Officer Rice seeks to hold the Defendant responsible for the United States Attorney's Office's expenses in prosecuting Defendant White by adding three levels to his Offense Level. Again there is no basis in the law

for this other than a brief citation to the general USSG provision. Officer Rice's argument essentially is that Defendant White should be further penalized because law enforcement personnel had to spend time enforcing laws. Without more substantial support for counting Defendant White's crimes twice (the base level plus the three point enhancement based on the same crime), this Court should ignore Officer Rice's claim. Thus, Defendant White's Offense Level should be 11 rather than 22.

IV.  **This Court Must Apply The Factors Under *18 U.S.C. § 3553(a)* When Imposing A Sentence In This Matter**

Although the guidelines are still a sentencing factor pursuant to *Booker,* it is now just one factor to be considered under the rubric of *18 U.S.C. § 3553(a)*. Under *18 U.S.C. § 3553(a)*, this court is to consider some general factors: 1) the need for the sentence to punish, deter and rehabilitate; 2) the kinds of sentences available; 3) the advisory guideline range; 4) pertinent policy statements under Section 994; 5) avoidance of sentencing disparities; and 6) the need to provide restitution to any victims of the offense. When these factors are considered, it is clear that this Court must grant the defendant a sentence which departs from the Guidelines. This court should grant Defendant White a sentence of probation or time served in this matter.

    a.  **Need for the Sentence to Punish, Deter and Rehabilitate**

In this case there is no need to punish, deter or rehabilitate Defendant White because he has already served a substantial sentence in what is, essentially, the same case. As described above, the two cases in Virginia and Illinois should have been joined from the beginning. Defendant White was convicted by the jury in his Virginia trial of multiple counts and has since served a sentenced of 30 months incarceration. To subject him to further punishment would serve no purpose because the crimes in both cases are substantially similar and all involve Defendant White allegedly threatening people through use of his website and emails. Any

further punishment would only waste the resources of the federal government and the time of anyone involved in monitoring Defendant White.

### b. Kinds of Sentences Available and the Advisory Guideline Range

In her PSR, Probation Officer Rice provides a full description of all of the possible sentences applicable to Defendant White's conduct as well as all of the guideline provisions available to this Court for consideration. Based on Defendant White's conviction after a jury trial, the maximum term of imprisonment for Count One is ten years pursuant to *18 U.S.C. §§ 1503* and 373. PSR, p. 16. Based on an erroneously calculated base offense level of 22 and an incorrect criminal history category of III, the guideline range for imprisonment is 51 to 63 months. Defendant White must make note of the fact that he has already served time for this sentence at FCI Beckley and at the MCC in Chicago.

Regarding the possibility of supervised release, this Court may impose a term of supervised release of not more than three years, pursuant to *18 U.SC. 3583(b)(2)*. PSR, p. 17. The guidelines, however, suggest a term of supervised release of two to three years, pursuant to *§ 5D1.2(a)(2). Id*. Additionally, if a sentence of imprisonment of one year or less is imposed, a term of supervised release is not required but is optional under *§5D1.1(b)*.

Under *18 U.S.C. § 3561(c)(1)*, this Court may impose on Defendant White a term of probation of not less than one nor more than five years probation. PSR, p. 12. Because the defendant's crime is a felony this Court must also impose a fine, restitution or community service in addition to probation under *18 U.S.C. § 3563(a)(2). Id*.

14

With regard to fines, the applicable statute calls for a maximum fine of $125,000 pursuant to *18 U.S.C. §§ 3571* and *373*. PSR, p. 17. The guidelines explain that the fine range for Defendant White's instant offense is from $7,500 to $75,000, pursuant to *§5E1.2(a)*.

In consideration of restitution in this matter, Officer Rice states that under the statute and pursuant to the Guidelines, restitution is not an issue. As a result, restitution is not an issue this Court must examine.

### c. Pertinent Policy Statements Pursuant to § 994

One of the factors which this court must consider under *§ 3553(a)* are any relevant policy statements under *28 U.S.C. § 994*. When Congress passed the Fair Sentencing Act of 2010 into law, numerous changes were made in how the court should apply the concerns of *§ 994*. Specifically, sections which the court was previously admonished for using unless in an exceptional circumstance are now proper for consideration. As the Sentencing Commission explains in the introductory notes to *§ 5H1*, that:

> The Act directs the Commission to consider whether eleven specific offender characteristics, 'among others,' have any relevance to the nature, extent, place of service, or other aspects of an appropriate sentence, and to take them into account in the guidelines and policy statements only to the extent that they do have relevance.

*Id*. As such, there are numerous factors which this court must consider and all weigh heavily in favor of probation or time served.

In this case, three specific factors under *28 U.S.C. § 994(d)* favor this Court's grant of probation or time served, including: previous employment; family ties and responsibilities; and the degree upon which the defendant relies upon criminal activity for a livelihood. *Id*. As shown by Defendant White's relevant criminal history, he certainly does not depend on criminal activity for his livelihood. PSR, p. 9. White's criminal history is short and, as discussed above,

15

substantially overstated. Additionally, Defendant's White's legitimate management of his rental properties has been substantially harmed, rather than helped by criminal activity and incarceration. Defendant White is a hard working individual that had previously built a very successful business.

Defendant White is married and has a baby girl which demands his attention. This is especially true in light of his having just finished a term of incarceration for his convictions in Virginia. Additionally, Officer Rice verified Defendant White's gainful employment as far back as 1996. PSR, pp. 14-15. White remained employed until his incarceration in these cases. Ultimately, all of the above factors are now appropriate for this Court to consider and all favor Defendant White receiving time served or probation so he may begin rebuilding his life.

### d. Avoidance of Sentence Disparities and The Need to Provide Restitution to any Victims of the Offense

There are no other defendants in this case facing sentencing by which to compare Defendant White, nor other similar cases which would raise issues of sentencing disparities. As Probation Officer Rice explains in the PSR, there is no need for restitution in this case. PSR, p. 18. As such, this section is essentially a non-issue and favors probation or time served rather than imprisonment. Anything else would be punishment more than is necessary under *18 U.S.C. § 3553(a)*, and thus, unreasonable.

**Conclusion**

For all of the foregoing reasons, this Court should grant Defendant White probation or time served as his sentence in this case.

Respectfully submitted on this 1st day of April, 2011.

/s/ Nishay K. Sanan_____
Nishay K. Sanan

Law Office of Nishay K. Sanan
327 S. Plymouth Court
Suite 201
Chicago, Illinois 60604
312-692-0360

/s/ Chris Shepherd_____
Chris Shepherd

Chris Shepherd, Esq.
327 S. Plymouth Court
Suite 201
Chicago, Illinois 60604

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | } | |
| | } | |
| V. | } | 08 CR 851-1 |
| | } | |
| | } | |
| **WILLIAM WHITE** | } | |

NOTICE AND CERTIFICATE OF SERVICE

*TO:* Michael Ferrara
219 SOUTH DEARBORN
5TH FLOOR
CHICAGO, ILLINOIS 60604

    ***PLEASE TAKE NOTICE*** that on April 1, 2011 WE CAUSED TO BE FILED WITH THE CLERK OF THE COURT, Defendant's Sentencing Memorandum, A COPY OF EACH IS SERVED UPON YOU.

    /S/ NISHAY SANAN_____
    Nishay K. Sanan, Esq.
    327. S. Plymouth Court
    Suite 201
    Chicago, IL 60604
    312-692-0360

**CERTIFICATE OF SERVICE**

    The undersigned, an attorney, first being duly sworn on oath, states that a copy of Motion was served upon the parties named by electronically filing the same pursuant to the local rules of ECM on 4/1/11.

    __/s/ Nishay Sanan_____