# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS

---

**UNITED STATES OF AMERICA**
        **Plaintiff,**

        **v.**                                           **Case No. 08-CR-851**

**WILLIAM WHITE**
        **Defendant.**

---

## DECISION AND ORDER

A jury found defendant William White guilty of soliciting another person to injure the foreperson of the jury that convicted white supremacist leader Matthew Hale. In a separate decision, I grant defendant's motion for judgment of acquittal pursuant to Fed. R. Crim. P. 29. Defendant also moves for a new trial under Fed. R. Crim. P. 33. In this decision, I conditionally deny the Rule 33 motion.

## I.  FACTS AND BACKGROUND

The government alleged that on his website, "Overthrow.com," defendant solicited another person to harm "Juror A" by displaying a post entitled, "The Juror Who Convicted Matt Hale," which read:

> Gay anti-racist [Juror A] was a juror who played a key role in convicting Matt Hale. Born [date], [he/she] lives at [address] with [his/her] gay black lover and [his/her] cat [name]. [His/Her] phone number is [phone number], cell phone [phone number], and [his/her] office is [phone number].

(Indictment [R. 5] at 2 ¶3, alterations in original.) As circumstances strongly corroborative of defendant's intent that another person harm Juror A, the indictment alleged that defendant was aware that white supremacists, Overthrow.com's target audience, sometimes committed acts

of violence against persons perceived as acting contrary to the interests of the white race. The indictment further alleged that defendant had previously posted on Overthrow.com what purported to be the home addresses of individuals he criticized on the website, at times stating that they should be harmed, setting forth various examples. In February 2009, the government obtained a superseding indictment, which set forth additional posts allegedly corroborative of defendant's intent that Juror A be harmed, including posts regarding the murders of Judge Joan Lefkow's husband and mother; an e-mail with the home address of various federal prosecutors, agents, and others involved in the Hale matter that had been circulating among white nationalist discussion groups; and defendant's apparent mental state.

After the government filed the superseding indictment, defendant moved to recuse the judges in the Northern District of Illinois based on the references to the Lefkow murders; the court granted the motion, and the case was re-assigned to me. I denied defendant's motions to transfer the case to another district and to disqualify the United States Attorney's Office for the North District of Illinois, but authorized defendant to file additional motions relating to the superseding indictment. Defendant subsequently moved to exclude the "non-Juror A" posts under Fed. R. Evid. 404(b), to strike those posts from the indictment as surplusage, and to dismiss the indictment on various grounds; the government moved to empanel an anonymous jury at trial.

I granted defendant's motion to dismiss the superseding indictment, holding that defendant's speech, as alleged in the indictment, was protected by the First Amendment and did not state a violation of 18 U.S.C. § 373.[1] United States v. White, 638 F. Supp. 2d 935 (N.D.

---

[1]I thus found it unnecessary to address the other motions.

Ill. 2009). The Seventh Circuit reversed and remanded the case for trial. United States v. White, 610 F.3d 956 (7th Cir. 2010).

Following the issuance of the appellate mandate, I held a telephonic status conference, at which the parties identified the motions unresolved during the case's previous pendency in this court: the government's motion for an anonymous jury and defendant's motions to exclude evidence under Fed. R. Evid. 403 and 404(b), to dismiss based on grand jury abuse, and to strike surplusage from the superseding indictment. With the agreement of the parties, I set the case for trial on January 3, 2011. On December 16, 2010, I issued a decision denying defendant's motions and granting the government's request for an anonymous jury. Prior to the trial, the parties submitted proposed jury instructions. Defendant requested that I instruct the jury on the First Amendment, submitting six proposed instructions. The case proceeded to trial on January 3, 2011. On January 5, the jury returned a verdict of guilty.

## II. DISCUSSION

### A. Legal Standard

Rule 33 provides: "Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). Relief under Rule 33 is reserved for extreme or exceptional circumstances, see, e.g., United States v. Linwood, 142 F.3d 418, 422 (7th Cir. 1998), such as where legal errors or admissions deprived the defendant of a fair trial, United States v. Kuzniar, 881 F.2d 466, 470 (7th Cir. 1989).

"If the court enters a judgment of acquittal after a guilty verdict, the court must also conditionally determine whether any motion for a new trial should be granted if the judgment of acquittal is later vacated or reversed. The court must specify the reasons for that

3

determination." Fed. R. Crim. P. 33(d)(1). Accordingly, even though I have granted defendant's Rule 29 motion, I must nevertheless conditionally decide the Rule 33 motion.

## B. Analysis

Defendant seeks a new trial on three grounds. None have merit.

### 1. Use of an Anonymous Jury

Defendant first argues that I should not have empaneled an anonymous jury in this case. (R. 152 at 15-19.) However, defendant's argument essentially constitutes a rehash of his opposition to the government's pre-trial motion on this issue. In his Rule 33 motion, he presents no evidence – indeed, he does not even argue – that he suffered prejudice during the trial based on the use of an anonymous jury. See United States v. Reed, 2 F.3d 1441, 1451 (7th Cir. 1993) (stating that a defendant seeking a new trial must demonstrate prejudice, not as a matter of speculation, but as a demonstrable reality). For instance, he does not argue that use of this procedure hampered voir dire or impeded his ability to strike potential jurors. Nor does he contend that I made any statement to the jury suggesting that their anonymous status was due to concerns for their safety. To the contrary, I told the jury: "To further ensure that both sides in the case receive a fair and impartial determination by members of the jury, we're going to use the procedure whereby you should respond by number rather than by name in order to ensure a fair, impartial jury and to avoid any contact between the parties or the lawyers or the jurors." (Trial Tr. at 7.) I further instructed the jury, both during preliminary and final instructions (Tr. at 551), on the burden of proof and presumption of innocence. See United States v. Edmond, 52 F.3d 1080, 1093 (D.C. Cir. 1995) (finding that similar statements and instructions "mitigated any prejudice from the anonymous jury procedure").

4

In his reply brief, defendant argues that basing the anonymous jury on the charge – on which he was presumed innocent – was improper in and of itself. He notes that prior to this case he had no history of harassing jurors, and that granting an anonymous jury based solely on the charge denied him the presumption of innocence. (R. 154 at 10.) Again, this goes to the wisdom of the initial decision to empanel an anonymous jury; it says nothing about the fairness of the trial.

Defendant also notes in his reply brief that during the trial one of the jurors, number 8, expressed concerns that his identity would be revealed; this, defendant contends, demonstrates prejudice. (R. 154 at 11.) However, the record does not support that argument. Prior to the start of the second day of trial, the court security officer ("CSO") advised that Juror 8 was concerned about placing his name on the juror sign-in sheet used internally to track attendance and pay the jurors. (Tr. at 259.) The CSO indicated that he advised Juror 8 that the sign-up sheet was used for payroll and went only to the court's jury room. (Tr. at 262.) On the agreement of the parties, I questioned Juror 8 in chambers. (Tr. at 263.) I told Juror 8 that the sign-in form was internal and not available to the public, and asked if he was comfortable. He replied: "No, I'm not comfortable, no. I'm concerned about the names being distributed on the form and it was displayed on the table and --" (Tr. at 264.) I told the Juror that the "form is not available to the public. And if there's any concerns that you have about that, I think I have the authority to seal it so that it could be – so that no one could ever ask for it and obtain it." (Tr. at 264.) Juror 8 replied: "I would appreciate that." (Tr. at 264.) On questioning from the government, Juror 8 indicated that no one else was present when he raised the issue with the CSO, and he did not discuss the issue with any other juror. (Tr. at 264-65, 266.) Defense counsel asked what Juror 8 was concerned about, and he replied: "My concerns are about my

5

name being associated with this trial." (Tr. at 265.) Counsel asked: "Based on fear or something else?" Juror 8 replied: "Based on what the trial is about." (Tr. at 265.) I then asked Juror 8, given the fact that I would seal the list of juror names, whether he was "in a position to render a fair verdict to both – to consider the evidence and to decide the case solely on the evidence and the law as I instruct you?" He replied: "Yes." (Tr. at 266.) Defendant nevertheless moved that Juror 8 be removed and replaced with an alternate. I reserved decision at the time (Tr. at 267) and later denied defendant's request (Tr. at 545).

Juror 8's statements do not evince prejudice warranting a new trial. As I noted in granting the government's motion for an anonymous jury, given the nature of the charge in this case, some concerns on the part of jurors were likely unavoidable. I concluded that empaneling an anonymous jury was the best way to ensure a fair trial for both sides, "with a jury that can focus on the evidence rather than worry about their own safety." (R. 133 at 17.) In any event, Juror 8 assured the court that despite his concerns he could render a fair verdict and decide the case based solely on the evidence and the law as instructed by the court. (Tr. at 266.) Nothing in the colloquy with this juror reflects "sheer terror," as defendant claims. (R. 154 at 11.)

Because defendant makes no showing of actual prejudice or unfairness, his motion fails. In any event, I addressed defendant's arguments in opposition to an anonymous jury in granting the government's motion. I acknowledged that:

> Empaneling an anonymous jury is an extreme measure that is warranted only where there is strong reason to believe the jury needs protection. United States v. Mansoori, 304 F.3d 635, 650 (7th Cir. 2002). An anonymous jury raises the specter that the defendant is a dangerous person from whom the jurors must be protected, which implicates the defendant's constitutional right to a presumption of innocence. Id. Juror anonymity may also deprive the defendant of information helpful in making appropriate challenges during jury selection. Id. Therefore, the

6

district court must balance the defendant's interest in preserving the presumption of innocence and in conducting a useful voir dire against the jurors' interest in their own security and the public's interest in having a jury assess the defendant's guilt or innocence impartially. Id.; see also United States v. Blagojevich, 612 F.3d 558, 561 (7th Cir. 2010) ("Anonymous juries are permissible when the jurors' safety would be jeopardized by public knowledge, or the defendant has attempted to bribe or intimidate witnesses or jurors."); United States v. Crockett, 979 F.2d 1204, 1215 (7th Cir. 1992) (explaining that the court should not order the empaneling of an anonymous jury without (a) concluding that there is strong reason to believe the jury needs protection, and (b) taking reasonable precautions to minimize any prejudicial effects on the defendant and to ensure that his fundamental rights are protected).

(R. 133 at 15-16.)  I considered the appropriate factors in deciding such a motion:

Factors bearing on the propriety of an anonymous jury include the defendant's involvement in organized crime; his participation in a group with the capacity to harm jurors; whether he previously has attempted to interfere with the judicial process; the severity of the punishment that the defendant would face if convicted; and whether publicity regarding the case presents the prospect that the jurors' names could become public and expose them to intimidation or harassment. Mansoori, 304 F.3d at 650-51.  The Seventh Circuit has suggested that something more than the organized crime label is required, which may include a demonstrable history or likelihood of obstruction of justice on the part of the defendant or others acting on his behalf or a showing that trial evidence will depict a pattern of violence by the defendant and his associates such as would cause a juror to reasonably fear for his own safety. Crockett, 979 F.2d at 1216.

(R. 133 at 16.)  And then concluded:

On review of these factors, and given the extraordinary circumstances presented here, I will grant the government's motion.  First, while defendant is not an alleged member of a traditional organized crime syndicate, he is the alleged leader of a white supremacist organization.  The government also alleges that defendant's target audience has previously committed acts of violence against perceived enemies of their cause.  Second, the indictment alleges that defendant solicited an attack on a federal juror on account of that juror's verdict.  These allegations may cause jurors and prospective jurors to reasonably fear for their own safety.  Third, while this case has not generated great publicity, there has been some, which may increase the likelihood of public disclosure of jurors' names, which may in turn leave them fearful of intimidation or harassment.

(R. 133 at 16, footnote omitted.)

Finally, I noted that:

7

Given the nature of the charge in this case, [safety] concerns on the part of jurors may be unavoidable. Empaneling an anonymous jury seems to be the best way to ensure a fair trial for both sides, with a jury that can focus on the evidence rather than worry about their own safety.

(R. 133 at 17.)  In light of defendant's argument (in his Rule 29 motion) that the jury decided the case based on fear rather than the facts, the decision to empanel an anonymous jury now seems particularly appropriate.

### 2.    Rule 404(b) Evidence

In another rehash of a pre-trial motion, defendant argues that I should grant him a new trial because I allowed the improper introduction of Fed. R. Evid. 404(b) evidence.  In denying defendant's motion in limine seeking exclusion of this evidence, I explained in detail why it should be admitted.  (R. 133 at 7-12.)  In sum, this evidence – the previous statements defendant created and posted on his website (Govt. Trial Ex. 5-35) – potentially constituted direct evidence of the "strongly corroborative circumstances" required by 18 U.S.C. § 373.  The postings also went to defendant's intent, a proper purpose under Rule 404(b).

In the Rule 33 motion, defendant presents no new arguments for exclusion.  Nor does he contend that the government presented additional, improper evidence.  Therefore, the motion fails on this ground as well.[2]

### 3.    Jury Instructions

Finally, defendant argues that I erred by failing to fully provide First Amendment instructions to the jury.  The government opposed any First Amendment instruction, but I disagreed (Tr. at 457-59), instructing the jury as follows:

---

[2]I note that defendant did not request any sort of limiting instruction regarding this evidence.

The First Amendment protects vehement, scathing, and offensive criticism of others. However, a solicitation, command, inducement, or endeavor to persuade another to engage in conduct constituting a violent felony as defined in these instructions is not protected by the First Amendment. If the purpose of the speaker or the tendency of his words are directed to ideas or consequences remote from the commission of the criminal act then the speech is protected by the First Amendment. Speech is protected unless both the intent of the speaker and the tendency of his words was to produce or incite an imminent lawless act. An imminent lawless act is one that is likely to occur. A statement which is mere political hyperbole or an expression of opinion does not constitute a solicitation. If you find that the defendant's statements were no more than an indignant or extreme method of stating political opposition to the Juror in the Matthew Hale case, then you are justified in finding that no solicitation was in fact made and you may find the defendant not guilty.

(Tr. at 554.) This instruction tracked defendant's first and second proposed instructions. (R. 137 at 2-3.)

Defendant now argues that I erred by not giving the other First Amendment instructions he proposed. However, defendant has waived any argument that I erred in instructing the jury. See United States v. Conner, 583 F.3d 1011, 1026-27 (7th Cir. 2009). After dealing with the government's objection to a First Amendment instruction, I asked defense counsel if he had any objections or was "otherwise satisfied with the instructions." (Tr. at 459-60.) Counsel replied: "I haven't looked at the other ones, but I'm satisfied with the elements instruction that I think is the main one." (Tr. at 460.)[3] Following a lunch break, the government again argued against the First Amendment instruction, but defendant raised no issues with the instructions. (Tr. at 463.) At the very least, this constitutes forfeiture of any objection to the instructions, which would permit appellate review for plain error only. See United States v. Irorere, 228 F.3d 816, 825 (7th Cir. 2000) (hold that merely submitting instructions is not sufficient to preserve an objection; rather, a defendant must object, on the record, to the judge's refusal to tender the

---

[3]The First Amendment instruction was contained within the overall elements instruction.

defendant's instructions and must clearly state the reasons for his objections).

Even if he has not waived or forfeited the issue, defendant fails to demonstrate that the absence of these additional instructions denied him a fair trial. He makes no showing that the instruction I provided failed to educate the jury on the difference between solicitation and advocacy. See White, 610 F.3d at 962 ("Based on the full factual record, the court may decide to instruct the jury on the distinction between solicitation and advocacy, and the legal requirements imposed by the First Amendment."). Rather, he argues that the additional instructions he proposed were correct statements of the law. (R. 152 at 25-28.) But that is only part of the inquiry. A theory of defense instruction should be given if: (1) it is a correct statement of the law; (2) the evidence lends some support to the defendant's theory; (3) the theory of defense is not part of the charge; and (4) the failure to include the instruction would deny the defendant a fair trial. United States v. Jenkins, 419 F.3d 614, 618 (7th Cir. 2005). Here, the defense theory – that defendant's posts constituted extreme political speech protected by the First Amendment – was presented through the charge I gave. See United States v. Hach, 162 F.3d 937, 945 (7th Cir. 1998) ("The third condition is alternatively phrased to mean that a defendant's theory of defense instruction must not include matters already covered by other instructions."). A defendant has no right to dictate the precise language of the charge; so long as the substance of a defendant's request is given by the court in its own language, the defendant has no cause to complain. United States v. Han, 230 F.3d 560, 565 (2d Cir. 2000). Nor is the court required to instruct on every particular that conceivably might be of interest to the jury. United States v. Rosario-Peralta, 199 F.3d 552, 567 (1st Cir. 1999). Justice does not require a new trial based on the instructions.

### III. CONCLUSION

10

**THEREFORE, IT IS ORDERED** that defendant's motion for a new trial is conditionally

**DENIED**.

Dated at Milwaukee, Wisconsin, this 19th day of April, 2011.

/s Lynn Adelman

_____
LYNN ADELMAN
District Judge

11